Judgment, Supreme Court, Bronx County (Robert Torres, J.), *503 entered April 5, 2011, upon a jury a verdict rendered in favor of defendant Nejat Kiyici, M.D. and against the plaintiff, unanimously reversed, on the law, without costs, the judgment vacated, the complaint reinstated, and the matter remanded for a new trial consistent with this decision.
In this medical malpractice action, plaintiff alleges that defendant, a gastroenterologist, failed to recommend and perform a timely colonoscopy. Plaintiff had first received a diagnosis of colon cancer in 1986, when she was 39 years old; her young age at this diagnosis placed her at high risk for developing another cancer.
In October 2002, while under treatment with a physician other than defendant, plaintiff had a colonoscopy; during that procedure, the physician removed two polyps. According to the pathology report, each polyp proved to be a tubular adenoma, a precursor of colorectal cancer. When plaintiff had another colonoscopy in December 2003, that procedure revealed a large tubular adenoma with severe dysplasia, and the treating physician recommended that plaintiff receive a follow-up colonoscopy in six months.
In July 2004, plaintiff came under defendant’s care. When defendant performed a colonoscopy in August 2004, he found two new polyps, one of which had developed into a tubular adenoma, and he recommended a three-year follow up. According to defendant, this recommendation fell within the framework set forth in the American Gastroenterological Association clinical guidelines (the Guidelines). The Guidelines, published in February 2003, addressed the recommended frequency of colonoscopies for patients depending on their risk for colon cancer. However, the expert testimony at trial established that the Guidelines simply gave recommendations for care based on statistical analysis and did not establish bright-line rules for treating individual patients.
In July 2006, during a colonoscopy performed after plaintiff complained of blood in her stool, defendant discovered that plaintiff had developed colon cancer again.
At trial, defendant requested that the court allow him to introduce the Guidelines into evidence, arguing that they would support the methodology he used in treating plaintiff. Plaintiffs counsel objected to the Guidelines’ admission, and requested a limiting instruction reminding the jury that the Guidelines did not set forth standards of care with regard to the diagnosis and treatment of plaintiffs colon cancer. The court agreed to give a limiting instruction, and informed the jury that the Guidelines “are being admitted as [they] relate to [defendant’s] position. *504 Ultimately, the determination as to whether [defendant] followed the accepted standards of care ... is a fact that you will have to determine, all the evidence and the facts of the case as you determine them.” The court then told the jurors that it would “instruct [them] further on that at the appropriate time.” The trial court, however, later declined to give any further instruction regarding the jury’s use of the Guidelines.
The court erred in failing to give the instruction that plaintiff requested. Although the trial court’s instruction informed the jury that it was to make its determination based on “all the evidence,” this instruction was not sufficient to guide the jury on how to apply the Guidelines to the facts before it. The court’s instruction as rendered failed to make clear to the jury that the Guidelines were simply recommendations regarding treatment, and thus, that compliance with the Guidelines did not, in and of itself, constitute good and accepted medical practice (see Spensieri v Lasky, 94 NY2d 231 [1999]; see also Sawyer v Dreis & Krump Mfg. Co., 67 NY2d 328, 337 [1986]).
The trial court should have given the jury an instruction specifically stating that the Guidelines were not the same as standards of care and that the jury was to make its determination based on the particular circumstances of the case, not on the Guidelines alone. Introducing the Guidelines into evidence without the appropriate limiting instruction allowed the jury to infer that a physician need not exercise professional judgment with regard to individual patients, but could simply abide by the recommendations promulgated in the Guidelines. Indeed, when it gave its instruction on the Guidelines, the trial court stated that it intended to instruct the jury further later in the proceedings, but never did so.
The error was not harmless. On the contrary, during its deliberations, the jury twice asked for a copy of the Guidelines, and soon after receiving them for the second time, returned a 5-to-l verdict in defendant’s favor. These circumstances strongly suggest that the Guidelines, given to the jury without an appropriate instruction, factored heavily into the jury’s determination.
Our decision comports with the Court of Appeals’ decision in Hinlicky v Dreyfuss (6 NY3d 636 [2006]). In Hinlicky, the defendant anesthesiologist in a medical malpractice case testified that he followed an algorithm set forth in certain clinical guidelines, and during his testimony, referred to the algorithm (id. at 642). The plaintiff objected to the testimony on the grounds that the algorithm was hearsay (id. at 642-643). The trial court found that the algorithm was admissible as non- *505 hearsay demonstrative evidence of the steps that the defendant had followed in treating his patient (id. at 644-645).
In Hinlicky, therefore, the demonstrative evidence was not admitted to establish the proper standard of care. Nor was there any suggestion that it did serve that purpose. Rather, the evidence in that case “was offered not for its truth, and not to establish a per se standard of care[,] but for the nonhearsay purpose of illustrating a physician’s decision-making methodology” (id. at 645 [internal quotation marks omitted]; see id. at 646-647). What is more, the plaintiff in Hinlicky never requested any limiting instruction.
In the case at bar, by contrast, not only did the court fail to give a proper limiting instruction as plaintiff requested, but defendant’s counsel suggested to the jury, both in his opening statement and in his summation, that the Guidelines did, in fact, represent the standard of care. These circumstances created a high probability that the jury would misunderstand the Guidelines’ proper use.
We have considered and rejected the parties’ remaining contentions. Concur — Tom, J.R, Saxe, Moskowitz and AbdusSalaam, JJ.