■ Atato Ducasse et al., Appellants, v New York City Health and Hospitals Corporation et al., Respondents. [49 NYS3d 109]—

Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered September 3, 2015, which, in this action alleging medical malpractice, granted defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

In this case, we are asked to decide whether defendants are entitled to summary judgment dismissing a claim of medical malpractice alleging that plaintiff Atato Ducasse (plaintiff patient) suffered injuries stemming from the use of chromic sutures rather than vicryl sutures during an episiotomy procedure. We find that defendants have made a prima facie showing sufficient to demonstrate their entitlement to summary judgment and that plaintiffs have failed to rebut that showing by way of medical evidence of a departure from accepted medical practice and that such departure was a proximate cause of plaintiff patient's injuries (*Anyie B. v Bronx Lebanon Hosp.*, 128 AD3d 1, 3 [1st Dept 2015]).

On November 13, 2011, while plaintiff patient was at Lincoln Hospital giving birth to her baby, the infant's head was delivered but the shoulders were stuck. After attempting several unsuccessful maneuvers, the attending physician, defendant Dr. Patrina Phillip, performed an emergency episiotomy, making an incision in the perineum (the area between the vagina and the anus). The baby was safely delivered, but plaintiff patient suffered a fourth degree perineal laceration during the course of delivery, resulting in severe bleeding.

Dr. Phillip repaired the laceration, using vicryl (synthetic) sutures for the rectal mucosa (the membrane that lines the

rectum) but using chromic (natural material) sutures for the internal and external anal sphincter (the muscles that control the opening and closing of the anus). On November 14, 2011, another doctor noted that plaintiff patient's blood loss had rendered her anemic. Plaintiff patient was discharged from the hospital on November 18, 2011.

On December 6, 2011, plaintiff patient was examined by a certified nurse midwife at Morris Heights Health Center. In her report dated December 9, 2011, the nurse commented that while plaintiff patient's perineum was in various stages of healing, there were "fourth-degree perineal lac[eration] postpartum cond[itions and] compl[ications] (ICD-664.34)" (all capitalization omitted), including a "[s]mall open area" in the perineum, and that plaintiff patient's condition would be reassessed in two weeks. At plaintiff patient's follow-up visit on December 20, 2011, she was examined by the same nurse, who, in her report on that examination, commented that plaintiff patient was healing well, although she noted that there was a small area of tunneling in the perineum and also yellow discharge.

On January 12, 2012, plaintiff patient was diagnosed with a rectovaginal fistula (abnormal passage between the two organs). She underwent four surgical procedures at Montefiore Hospital to repair the fistula and restore colorectal control. The fistula eventually healed, but plaintiff patient continued to suffer from fecal incontinence. On January 31, 2013, plaintiff patient and her husband brought this medical malpractice action, claiming that Dr. Phillip was negligent in using chromic rather than vicryl sutures in some portions of the laceration repair and that defendants' negligent obstetrical care resulted in plaintiff patient's fistula, fecal incontinence, and colorectal instability.

A defendant in a medical malpractice action demonstrates prima facie entitlement to summary judgment by showing either that he or she did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries (*Anyie B.*, 128 AD3d at 3). Once a defendant has established prima facie entitlement to summary judgment, the burden shifts to plaintiff to "rebut the prima facie showing via medical evidence attesting that the defendant departed from accepted medical practice and that such departure was a proximate cause of the injuries alleged" (*id.*).

Here, defendants established their prima facie entitlement to judgment as a matter of law. Defendants submitted evidence, including an expert's opinion, demonstrating that there was no

departure from good and accepted medical practice and that, even if there was a departure, it was not a proximate cause of plaintiff's alleged injuries (*see Anyie B.*, 128 AD3d at 3; *cf. Pullman v Silverman*, 28 NY3d 1060, 1063 [2016] [holding that because the defendant physician's expert proffered conclusory statements unsupported by medical research, the defendant did not make a prima facie showing of lack of probable cause and therefore was not entitled to summary judgment]).

In opposition, plaintiffs contended that an issue of fact existed as to whether there was a departure from the standard of care. Plaintiffs relied on their own expert, who opined that defendants' use of chromic rather than vicryl sutures to repair plaintiff patient's fourth degree perineal laceration, although generally acceptable, was a departure from accepted medical practice where, as here, the patient was anemic or suspected to be anemic.

Assuming, without deciding, that plaintiffs demonstrated the existence of an issue of fact as to whether there was a departure from the standard of care, they did not do so with respect to whether the departure was a proximate cause of plaintiff patient's injuries. Plaintiffs' expert opined that the use of chromic rather than vicryl sutures was a substantial factor in causing plaintiff patient's injuries because chromic sutures retain their tensile strength for a shorter period of time (14 days) than vicryl sutures (35 days), but did not offer any opinion as to precisely how much time elapsed between the laceration repair and the breakdown of the sutures. Rather, plaintiffs' expert merely opined that the breakdown started before December 20, 2011 and continued through January 10, 2012.

Furthermore, although the first examination of plaintiff patient by the certified nurse midwife took place on December 6, 2011, 23 days after her November 13 laceration repair, by which time, according to plaintiffs' expert, chromic sutures would have broken down but vicryl sutures would not have, the nurse's report neither attributes the "[s]mall open area" to a breakdown of the sutures nor makes any mention of any such breakdown. And with respect to the nurse's report on the second examination of plaintiff on December 20, 2011, 37 days after the laceration repair, even assuming that the "small area of tunneling" noted by the nurse was attributable to a breakdown of the sutures, this examination took place more than 35 days after the laceration repair, by which time, according to plaintiffs' expert, both chromic and vicryl sutures would have broken down. Thus, this evidence is insufficient to raise

an issue of fact as to whether the breakdown of the sutures had begun at any time at which the use of vicryl sutures instead of chromic sutures could have made any difference. Therefore, plaintiffs have failed to meet their burden of proffering any evidence sufficient to raise an issue of fact as to whether the use of chromic sutures rather than vicryl sutures was a proximate cause of plaintiff patient's injuries (see *Anyie B.*, 128 AD3d at 3). Concur—Sweeny, J.P., Renwick, Andrias, Kahn and Gesmer, JJ.