■ RANEE BARTOLACCI-MEIR et al., Respondents, v ROBERT SASSOON, M.D., Defendant, and ELLEN SCHERL, M.D., et al., Appellants. [50 NYS3d 395]—

Order, Supreme Court, New York County (Douglas E. McKeon, J.), entered June 24, 2016, which denied defendants-appellants' motion for summary judgment dismissing the complaint as against them, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

On September 10, 2010, four months after undergoing a cesarean section, plaintiff Raneee Bartolacci-Meir was diagnosed, via laparoscopic surgery, with a fistula. Defendant Dr. Ellen Scherl, a gastroenterologist, treated plaintiff both before and after her cesarean. Defendant Dr. Rasa Zarnegar, a surgeon, first treated plaintiff on July 15, 2010, on referral from an associate of Dr. Scherl. Dr. Scherl and Dr. Zarnegar are employees at defendant New York-Presbyterian/Weill Cornell Medical Center (Presbyterian). Dr. Robert Sassoon, plaintiff's obstetrician, is also a defendant, but not a party to this appeal. The gravamen of plaintiff's claim is that her doctors failed to diagnose the fistula, and that the delay in diagnosis led to the need for extensive resection of her cecum, appendix and intestines.

Dr. Scherl, Dr. Zarnegar, and Presbyterian moved for summary judgment, arguing that neither doctor deviated from the standard of care for their respective professions, gastroenterology and surgery.

In support of their motion, defendants submitted an affidavit of Dr. Randolph Steinhagen, a colorectal surgeon, who opined that Dr. Zarnegar's treatment of plaintiff was within good and accepted practice. Specifically, Dr. Steinhagen stated that when Dr. Zarnegar saw plaintiff for the first time on July 15, 2010, he correctly diagnosed her with a surgical site infection, and treated it appropriately, with drainage and antibiotics. According to Dr. Steinhagen, the fluid drained by Dr. Zarnegar was the same fluid shown on the CT scan taken July 15, 2010, a collection in the anterior pelvic wall that tracked the cesarean incision and was not in the pelvic cavity. Dr. Steinhagen further opined that Dr. Zarnegar's treatment on July 20, 2010, i.e., examining the wound, repacking it, and arranging for a visiting nurse to apply VAC (vacuum-assisted closure) dressing therapy, was appropriate. And it was appropriate for the doctor to close the wound on August 2, 2010, after blood and culture testing confirmed that the infection had resolved. When plaintiff appeared on August 3, experiencing swelling, redness and pain at the wound site, she denied fever and was having normal bowel movements. These complaints were consistent with an infection, and it was thus appropriate to treat the wound through August and early September with antibiotics, further drainage, and regular dressing changes with VAC therapy. Dr. Steinhagen averred that nothing in plaintiff's clinical presentation warranted more aggressive intervention until the emergence of brown discharge on September 8, 2010. The July CT scan showed no evidence of fluid in the pelvic cavity or anything suggestive of a fistula; even the September CT scan did not definitely show a fistula. And upon the emergence of discharge containing E. coli bacteria, timely and appropriate follow-up was performed in the form of a CT scan, and scheduling of infectious disease and surgical consultations. With regard to Dr. Scherl, Dr. Steinhagen opined that while a gastroenterologist may be involved in the diagnosis of a fistula in the digestive track, a patient must be referred to a surgeon once the fistula is identified. Thus, it was appropriate for the doctor to defer to Dr. Zarnegar and Dr. Sassoon for the treatment of plaintiff's wound.

Defendants also submitted an affidavit by Dr. Vijay Yajnik, a gastroenterologist. Dr. Yajnik opined that Dr. Scherl correctly concluded that plaintiff's June 2010 complaints were related to her irritable bowel syndrome (IBS), and there was no evidence of an inflammatory or autoimmune condition. Thus, by prescribing Miralax and Xifax, Dr. Scherl's treatment of plaintiff was within the standard of care for a gastroenterologist. Moreover, nothing in plaintiff's complaints or testing from

June to September indicated that Dr. Scherl should revisit her diagnosis. Nor was it outside the standard of care for Dr. Scherl to refer plaintiff to surgeons and defer to those surgeons with regard to treatment of the wound, since gastroenterologists do not treat fistulas. Regarding causation, Dr. Yajnik opined that biopsy results of the colon and ileum confirmed that the fistula did not develop from either IBS or an undiagnosed bowel disorder. Thus, the care rendered by Dr. Scherl had no relationship to the fistula.

In opposition, plaintiffs argued that Dr. Scherl did not investigate a possible bowel injury "when every indication was that she had experienced a bowel injury," including that "the CT scan ordered by Dr. Sassoon identified multiple pelvic adhesions." Plaintiffs also argued that Dr. Zarnegar should have recognized that plaintiff was not improving and looked beyond the possibility of a superficial infection.

Plaintiffs submitted an affidavit by Dr. David Befeler, a general surgeon. Dr. Befeler stated that the fistula was caused by operative injury during plaintiff's cesarean section surgery. According to Dr. Befeler, plaintiff "was noted to have had continuous and persistent malodorous discharge which is clearly a surgical problem since the fistula which developed was not managed." Dr. Befeler also stated that the July 14, 2010 CT scan of the pelvis ordered by Dr. Sassoon showed "multiple pelvic adhesions," and this CT scan was shared with Dr. Scherl. According to Dr. Befeler, Dr. Zarnegar treated plaintiff with "drainage of the fecal leakage at the wound site," instead of reviewing the CT scan, which would have led Dr. Zarnegar to treat plaintiff "more aggressively," "diagnos[ing] the patient's abscess and sepsis and treat[ing] her fistula surgically." Thus, Dr. Befeler opined, both doctors failed to follow accepted medical practice by requesting "recommendations and guidance regarding either further diagnostic testing or treatment or both." He concluded that if the fistula had been diagnosed two months earlier, a minimally invasive procedure could have been used and resection of the bowels avoided.

In reply, defendants submitted additional affidavits by Dr. Randolph Steinhagen and Dr. Yajnik. As an initial matter, Dr. Steinhagen opined that plaintiffs' expert's opinion was fatally flawed as to Dr. Scherl, since, as a general surgeon, Dr. Befeler was unqualified to render an opinion on the standard of care for gastroenterologists. He pointed out that when Dr. Scherl first learned of plaintiff's wound issue, plaintiff was already being followed by a surgeon. Dr. Steinhagen also opined that Dr. Befeler mis-characterized the medical records. For example,

while Dr. Befeler stated that the July 14, 2010 CT scan showed a bowel injury, the scan showed only a collection of fluid " 'anterior to the musculature' " of the pelvis, a location outside the pelvic cavity, and thus outside the bowels. According to Dr. Steinhagen, the superficial wound infection depicted in the July CT scan was unrelated to the abscessed cavity between the uterus and bladder identified by a Dr. Milsom in September. Dr. Steinhagen also pointed to the fact that while Dr. Befeler referred to "malodorous discharge" and drainage of fecal matter by Dr. Zarnegar, the medical records showed the fluid was clear and consistently negative for bacteria. Dr. Steinhagen also disagreed with Dr. Befeler's conclusions. For example, Dr. Befeler opined that the left-quadrant pain should have caused Dr. Zarnegar to investigate further, but Dr. Steinhagen observed that such pain is common with both IBS and cesarean section incisions. Regarding Dr. Scherl, Dr. Steinhagen noted that Dr. Befeler did not indicate what steps she should have taken other than those she took, such as referring plaintiff to a surgeon. And on the issue of causation, Dr. Steinhagen disagreed with Dr. Befeler's conclusion that plaintiff suffered an injury to her bowels during the cesarean. According to Dr. Steinhagen, "[T]his conclusion is not at all supported in the medical records and represents pure speculation."

The court denied defendants' motion. In discussing plaintiff's expert, the court observed that plaintiff "was noted to have continuous and persistent malodorous discharge," a fact that her expert pointed to as evidence that a fistula had developed but was not being managed.

Defendants correctly argue on appeal that their experts showed in detail that there was no departure from the standard of care in treating plaintiff and that plaintiffs failed to rebut that showing with a qualified expert who opined based upon facts in the record.

Where a defendant makes a prima facie case of entitlement to summary judgment dismissing a medical malpractice action by submitting an affirmation from a medical expert establishing that the treatment provided to the injured plaintiff comported with good and accepted practice, the burden shifts to the plaintiff to present evidence in admissible form that demonstrates the existence of a triable issue of fact (see *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Here, defendants met that burden.

Defendants' expert, Dr. Steinhagen, opined that there was no evidence supporting plaintiff's claim that a fistula should have been included within defendant doctors' differential diagnoses

before the wound leaked fluid containing fecal matter. The expert's opinion relied on the fact that the July CT scan showed only a superficial collection of fluid, without any fluid or abscess observed within the pelvic cavity. Indeed, Dr. Steinhagen observed that even the report of the CT scan taken in September stated that there was no evidence of fistula, although an abscess within the pelvic cavity had been identified for the first time. Further, defendants' expert pointed to the fact that multiple wound cultures taken between June and August were negative, the first bacterial gram-positive result occurring with the September culture taken at Southampton Hospital. Thus, Dr. Steinhagen opined, there was no reason for the doctors to attempt more aggressive treatment until they had a positive culture, and the care they provided was within the accepted standard.

Defendants' gastroenterology expert, Dr. Yajnik, opined that Dr. Scherl did not deviate from the standard of care as a gastroenterologist, appropriately diagnosing plaintiff with IBS, ruling out any other issues such as Crohn's disease, and referring her to a surgeon and her obstetrician for wound care. Dr. Yajnik observed that gastroenterologists may diagnose fistulas, but they do not treat them; they refer their fistula patients to surgeons. Thus, it was within the standard of care for Dr. Scherl to rely on the surgeons to manage wound care. Further, as opined by Dr. Yajnik, nothing in the testing pointed to the presence of a fistula, particularly the July CT scan, so there was nothing for Dr. Scherl to diagnose.

The nonconclusory opinion of a qualified expert based on competent evidence that a defendant departed from accepted medical practice and that that departure was a proximate cause of plaintiff's injury precludes a grant of summary judgment in favor of the defendants (see *Diaz v New York Downtown Hosp.*, 99 NY2d 542 [2002]; *Cregan v Sachs*, 65 AD3d 101, 108 [1st Dept 2009]). However, the affidavit must be by a qualified expert who "profess[es] personal knowledge of the standard of care in the field of . . . medicine [at issue], whether acquired through his practice or studies or in some other way" (*Nguyen v Dorce*, 125 AD3d 571, 572 [1st Dept 2015] [pathologist not qualified to render opinion as to whether defendant deviated from the standard of care in the field of emergency medicine]; *see also Atkins v Beth Abraham Health Servs.*, 133 AD3d 491 [1st Dept 2015] [osteopath not qualified to render opinion on treatment of a geriatric patient with diabetes and other conditions]; *Udoye v Westchester-Bronx OB/GYN, P.C.*, 126 AD3d 653 [1st Dept 2015] [pathologist not qualified to render an opinion

as to the standard of care in obstetrics or cardiology]; *Mustello v Berg*, 44 AD3d 1018 [2d Dept 2007] [general surgeon not qualified to render opinion as to gastroenterological treatment], *lv denied* 10 NY3d 711 [2008]).

Here, there is no indication that Dr. Befeler possessed the requisite background and knowledge to furnish a reliable opinion concerning the practice of gastroenterology (*see Browder v New York City Health & Hosps. Corp.*, 37 AD3d 375 [1st Dept 2007]). While a gastroenterologist may well be qualified to render an opinion on a surgical procedure involving the gastrointestinal system, it cannot be said that a general surgeon is qualified to opine on any specialty simply because the specialist may eventually refer the patient for surgery. Indeed, Dr. Befeler averred only that his conclusion that both doctors "were negligent in failing to follow standard and accepted medical procedures" was based upon his "review of the above records, [his] education, years of training, and [his] forty year experience in the field of General Surgery." Nowhere did the doctor set forth any experience in gastroenterology or detail the standard of care for that specialty. Moreover, the expert did not provide any detail as to what Dr. Scherl should have done other than refer plaintiff to a surgeon, which she did. While he referred to "further diagnostic testing," he did not say what those tests would be.

Although plaintiffs correctly argue that a doctor may have the requisite knowledge to opine on a specialty outside his particular field (*Joswick v Lenox Hill Hosp.*, 161 AD2d 352, 355 [1st Dept 1990]), here, their expert failed to say that he possessed such knowledge and to explain how he came to it. Further, he failed to set forth the standard of care allegedly violated. Thus, plaintiffs did not adduce the opinion of a qualified expert so as to rebut Dr. Scherl's showing of her entitlement to summary judgment.

Dr. Befeler's opinion was also insufficient to rebut defendants' showing. "[G]eneral allegations of medical malpractice that are conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice are insufficient to defeat a malpractice defendant's [summary judgment motion]" (*Melendez v Parkchester Med. Servs., P.C.*, 76 AD3d 927, 927 [1st Dept 2010]; *see also Coronel v New York City Health & Hosps. Corp.*, 47 AD3d 456 [1st Dept 2008]). An expert opinion that is contradicted by the record cannot defeat summary judgment (*see Browder*, 37 AD3d at 376; *Wong v Goldbaum*, 23 AD3d 277 [1st Dept 2005]). Based upon these principles of law, plaintiffs' expert opinion was insufficient to

contradict defendants' expert opinion that plaintiff was appropriately treated and that there was no evidence that plaintiff was suffering from a fistula until September of 2010.

Dr. Befeler's claims all rest on the assumption that plaintiff had a diagnosable fistula in July, when he claims that the CT scan showed bowel injury and plaintiff's wound was leaking fecal matter. But those statements are not only unsupported by the record; they are also contradicted by it. While Dr. Befeler stated in his affidavit that the July CT scan showed "multiple pelvic adhesions," the scan showed only an abscess anterior to the pelvic wall, i.e., not within the pelvis. The scan also showed no evidence of fistula or bowel injury. Indeed, the scan report states that other than the anterior fluid, "[n]o other mass lesions or lymphadenopathy are identified within the pelvis." And while the September CT scan showed collections of fluid within the pelvic cavity requiring further investigation, even that scan did not show a fistula. Regarding Dr. Befeler's statement that plaintiff's wound site had drained malodorous "fecal leakage" since July, plaintiff testified at her deposition that she had no recollection of fluid in the wound having an odor until she went to Southampton Hospital in September. And the medical records demonstrate that the fluid was always odorless, with multiple wound swabs revealing no bacteria.

Dr. Befeler's statement that plaintiff had continued unexplained pain is also unsupported by the record. The only noted episode of pain came on August 2, 2010, after Dr. Zarnegar closed the wound and it filled with fluid. And Dr. Befeler's supposition that plaintiff's pain was masked by painkillers is speculation. Lastly, and as with Dr. Scherl, Dr. Befeler did not identify a specific standard of care that was violated or what test or procedure that should have been performed. He merely stated that the fistula should have been discovered, with no indication as to how that discovery could or should have been made, other than by laboratory or image testing. In light of his reliance on inaccurate facts and his speculation that the fistula should have been found, without any specificity as to how that could have been accomplished, Dr. Befeler's opinion does not create a question of fact warranting denial of defendants' motion.

We have considered plaintiffs' remaining contentions and find them unavailing. Concur—Acosta, J.P., Manzanet-Daniels, Webber and Gesmer, JJ.