| **Odnoralov v Weiner** |
|:---:|
| 2024 NY Slip Op 32831(U) |
| August 12, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 805088/2018 |
| Judge: Judith N. McMahon |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JUDITH N. MCMAHON**                    PART            **30M**

*Justice*

-------------------------------------------------------------------X

ALEXANDRA ODNORALOV, BRIAN DORFMANN,
ALEXANDRA ODNORALOV,

                                              Plaintiff,

                    - V -

LON WEINER, RYAN SUPLEE, SYED SAYEED[1],
HERBERT COOPER, LENOX HILL HOSPITAL

                                              Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 805088/2018 |
| MOTION DATE | 07/23/2024 |
| MOTION SEQ. NO. | 001 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 139, 140

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 137, 143, 144

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 138, 141, 142

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Upon the foregoing documents, the motion for summary judgment of the defendant

Herbert J. Cooper, M.D. (Motion Seq. No. 001) is granted, and the complaint and all cross

claims against Dr. Cooper are severed and dismissed. The motions for summary judgment of the

defendant Lenox Hill Hospital (hereinafter "LHH") (Motion Seq. No. 002) and Lon S. Weiner,

M.D. (Motion Seq. No. 003) are granted to the extent that plaintiff's "Second" "Third" and

"Fourth" causes of action are severed and dismissed as unopposed, and the balance of the

---

[1]     A so-ordered Stipulation of Partial Discontinuance was executed in favor of plastic surgeon, Syed M. Sayeed, M.D., on May 18, 2023 (*see* NYSCEF Doc. No. 55).

**805088/2018  ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**
**Motion No.  001 002 003**

**Page 1 of 12**

1 of 12

motions is denied. LHH is a defendant in this case only to the extent of its vicarious liability for the alleged negligent conduct of its employees, including vascular surgeon Ryan S. Suplee, M.D.[2]

This medical malpractice and wrongful death action arises out of defendants' alleged failure to provide proper veinous thromboembolism care and treatment to plaintiff's decedent, 53-year-old Brian Dorfmann, during his hospitalization at LHH from April 5, 2016, until April 16, 2016.

It appears undisputed that in the early morning hours of April 5, 2016, Mr. Dorfmann, who fell in the vestibule of his apartment building, sustained a comminuted fracture of his right tibial plateau that was so severe it caused vascular injury to the popliteal artery, resulting in ischemia and lack of blood flow to the right leg. At 10:30 a.m. Mr. Dorfmann underwent emergency orthopedic surgery (external fixation) performed by Dr. Cooper to stabilize the leg, while the attending vascular surgeon, Dr. Suplee, concurrently performed a resection of the right popliteal artery to reconstruct the arterial blood flow. The procedure ended at 4:36 p.m. and Mr. Dorfmann was transferred to the Surgical Intensive Care Unit ("SICU") under the service of Dr. Suplee/vascular surgery. A deep vein thrombosis ("DVT") prophylaxis plan was devised by Dr. Suplee and the critical care/intensivist, Dr. Bushra Minna, following the surgery.

Mr. Dorfmann remained in the SICU for approximately one week, during which he was given 5,000 milligrams of subcutaneous heparin every eight hours. He was provided with a sequential compression device and aspirin, as additional DVT prophylaxis. A bilateral Duplex venous lower extremity ultrasound was performed on April 9, 2016, that revealed no DVTs above the knees. On April 11, 2016, Mr. Dorfmann was discharged from SICU to a Stepdown

---

[2]     A so-ordered Stipulation of Discontinuance was executed in favor of Dr. Suplee (*see* NYSCEF Doc. No. 147)

805088/2018   ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.
Motion No.  001 002 003

Page 2 of 12

2 of 12

[*2]

Unit. Dr. Suplee's note dated April 11, 2016, states: "[The patient] will transfer to the orthopedic service under Dr. Weiner for a planned open reduction internal fixation, to be performed later in the week." Dr. Mina cleared decedent for the second orthopedic procedure on April 14, 2016, and the surgery was performed without complication on April 15, 2016. Mr. Dorfmann suffered a fatal cardiac arrest caused by a massive saddle pulmonary embolism ("PE") upon his return from a CT angiogram on the evening of April 16, 2016.

Defendants move for judgment dismissing the complaint on the grounds that decedent's care and treatment was always within the applicable standard of care and was not a proximate cause of his injuries and death. Plaintiff opposes the motions, maintaining that had decedent been timely and properly worked up for his tachycardia and/or fevers, a prompt administration of therapeutic anticoagulants and/or other treatments would have been available that would have prevented the massive PE and resulting cardiac arrest and premature death.

### PERTINENT CHRONOLOGY AFTER APRIL 5, 2016, SURGERY

On **April 7, 2016**, Dr. Suplee noted that decedent had a fever the previous afternoon as well as one on the morning of April 7th, reaching 102. White blood cell count was normal, and the etiology of the fever was unclear.

On **April 8, 2016**, decedent was observed with persistent fevers and a swollen right lower calf. The closure of the fasciotomy of the right calf had to be cancelled and a wound vacuum was placed instead. It was noted that Mr. Dorfmann would require skin graft in the future.

On **April 9, 2016**, decedent's heart rate was elevated between 94 and 112 bpm, and his temperature fluctuated between 100.1 to 103 degrees. A chest x-ray was negative for infection or abnormalities, and a bilateral Duplex ultrasound of the lower extremities ordered by Dr. Suplee was unremarkable for clots and the common femoral, femoral, popliteal, proximal greater

**805088/2018  ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**
**Motion No.  001 002 003**

Page 3 of 12

3 of 12

[* 3]

saphenous and proximal deep femoral veins were patent and free of thrombus bilaterally. This study was "limited" due to hardware in the right lower leg, but the major veins above the knee were appropriately evaluated.

On **April 10th** decedent's fever had resolved, but his right lower extremity was positive for edema.

On **April 11th** a decision was made to transfer decedent to the orthopedic stepdown service, to Dr. Weiner for open reduction and internal fixation.

On **April 13, 2016**, decedent was received in the Stepdown unit and became a patient of the orthopedic service under Dr. Weiner, after being cleared for surgery by Dr. Suplee. At the time of Dr. Suplee's examination, Mr. Dorfmann was afebrile with stable vital signs.

On **April 14th** Heparin was discontinued in preparation for the second orthopedic surgery, with the last dose being administered at 10:40 p.m.

On **April 15, 2016,** at 8:38 a.m., Mr. Dorfmann underwent removal of the external fixator and open reduction and internal fixation of the right proximal tibia fracture, followed by open wound closure performed by plastic surgeon, Dr. Sayeed. The operation ended at 11:38 a.m. and he was transferred from recovery to SICU under the orthopedic service at 4:00 p.m. At **5:31p.m.** decedent had a fever of 101.5, and by **8:17 p.m.** his heartrate was documented at 112 bpm. Heparin was resumed at **9:15 p.m.**

On **April 16th** at **1:01 a.m.** decedent's heartrate was 115 bpm, and he had a fever of 101.8. At **1:00 p.m.** his heartrate was 116 bpm and by **1:43 p.m.** it had increased to 124 bpm. His heartrate remained elevated at **5:20 p.m.** ranging between 119 and 124 bpm, and at 6:00 p.m. decedent's temperature was recorded at between 100.1 and 100.6. Dr. Weiner testified that he was unaware of these values as they were not communicated to him (*see* NYSCEF Doc. No. 103,

**805088/2018 ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**
**Motion No. 001 002 003**

**Page 4 of 12**

4 of 12

pp.172;187-188). By **8:18 p.m.** decedent's heartrate was documented at 126-127 bpm. At **8:55 p.m.** a nurse requested that a physician come to assess decedent's tachycardia. Dr. Andrew Mo, the on-call orthopedic resident, examined Mr. Dorfmann at **9:30 p.m. and implemented PE protocols.** Dr. Mo also contacted Dr. Mina, who recommended a CT angiogram and administration of 80 mg of Lovenox, subcutaneously injected. The CTA and Lovenox were ordered by Dr. Mo, and Lovenox was injected at **10:28 p.m.** The CTA, performed at around **10:44 p.m.,** revealed a saddle PE[3]. At approximately **10:50 p.m.,** while being brought back from the CT room, Dr. Mo observed the decedent becoming more agitated and diaphoretic. Mr. Dorfmann became unresponsive, and a code blue and rapid response was initiated. At **11:01 p.m.** Mr. Dorfmann suffered a cardiac arrest. He was declared deceased at **11:35 p.m.**

The autopsy report indicates that the cause of death was "bilateral pulmonary emboli from deep venous thrombosis of legs due to limited mobility after right tibia fracture and vascular injury due to blunt impact" (*see* NYSCEF Doc. No. 87).

## MOTIONS FOR SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the proponent must make prima facie showing of entitlement to judgment as a matter of law, through admissible evidence demonstrating the absence of any material issue of fact (*see Klein v. City of New York*, 89 NY2d 833 [1996]; *Ayotte v. Gervasio*, 81 NY2d 1062 [1993]; *Alvarez v. Prospect Hospital*, 68 NY2d 320 [1986]).

"Since summary judgment is the equivalent of a trial, it has been a cornerstone of New York jurisprudence that the proponent of a motion for summary judgment must demonstrate that

---

[3] The results, available at approximately 11:30 p.m., indicated a filling defect within the right main pulmonary artery with distal extension as well as left upper and lower lobar pulmonary arteries with distal extension compatible with central pulmonary embolism.

**805088/2018 ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**
**Motion No. 001 002 003**

Page 5 of 12

5 of 12

there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Ostrov v. Rozbruch*, 91 AD3d 147 [1st Dept. 2012]).

In support of his motion for summary judgment, Dr. Cooper submits the affirmations of an orthopedic surgeon, Jeffrey H. Richmond, M.D. (*see* NYSCEF Doc. No. 59), and a vascular surgeon, Larry A. Scher, M.D. (*see* NYSCEF Doc. No. 60). Both experts emphasize that Dr. Cooper was not a part of the plan for DVT management[4], that Dr. Cooper's involvement with the decedent ceased after he placed the external fixator on April 5th, and notwithstanding, that there was no need to alter the DVT prophylactic treatment from 5000 units of subQ Heparin three times a day at any time during Mr. Dorfmann's hospital admission.

This Court finds that Dr. Cooper met his *prima facie* burden of entitlement to judgment as a matter of law through the factually based and detailed affirmations of Dr. Richmond and Dr. Scher (*see Einach v. Lenox Hill Hosp.*, 160 AD3d 443 [1st Dept. 2018]).

"Where a defendant makes a *prima facie* case of entitlement to summary judgment dismissing a medical malpractice action by submitting an affirmation from a medical expert establishing that the treatment provided to the injured plaintiff comported with good and accepted practice, the burden shifts to the plaintiff to present evidence in admissible form that demonstrates the existence of a triable issue of fact" (*Bartolacci-Meir v. Sassoon*, 149 AD3d 567 [1st Dept. 2017]; *see also DeCintio v. Lawrence Hosp.*, 25 AD3d 320 [1st Dept. 2006]; *Ducasse v. New York City Health & Hosps. Corp.*, 148 AD3d 434 [1st Dept. 2017]; *Zuckerman v. City of New York*, 49 NY2d 557 [1980]).

---

[4]    "[T]he initial order for the 5000 units subQ Heparin three times daily was placed after Dr. Cooper's surgery and ordered by Wendy Ho, a critical care physician's assistant, on April 5, 2016, at 6:30 p.m., which was well *after* the completion of Dr. Cooper's surgery and after the patient was already admitted to the SICU" (*see* Affirmation of Larry A. Scher, M.D., NYSCEF Doc. No. 60, para. 18).

**805088/2018  ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**
**Motion No.  001 002 003**

Page 6 of 12

[* 6]

Here, plaintiff has failed to raise a triable issue of fact as to the culpability of Dr. Cooper. Plaintiff's expert orthopedic surgeon (*see* NYSCEF Doc. No. 119) mentions Dr. Cooper once in the 23-page affirmation offered in opposition (*i.e.,* "Dr. Cooper and/or Dr. Weiner as the attending physicians, were responsible for the overall care and treatment [of decedent] during his admission" [*id.,* para. 50]), and fails to identify a single departure from the standard of care committed by Dr. Cooper. According to the hospital chart, Dr. Cooper's involvement with decedent began and ended on April 5, 2016, with Dr. Cooper's last note being recorded after he completed his portion of the surgery, at 1:30 p.m. on April 5th (*see* NYSCEF Doc. No. 61, p. 8). Inasmuch as Dr. Cooper was not involved with the DVT prophylactic planning and administration, his motion for judgment dismissing the complaint is granted.

In support of Motion Seq. No. 002 for summary judgment, LHH submits the expert affirmations of vascular surgeon, William Duffy Suggs, M.D. (*see* NYSCEF Doc. No. 75), and internal medicine/pulmonary disease and critical care specialist, Steve Salzman, M.D. (*see* NYSCEF Doc. No. 76). Dr. Suggs opines "to a reasonable degree of medical certainty that the medical care providers at LHH at all times acted in accordance with accepted standards of good medical practice in its treatment of decedent [and] decedent's alleged injuries were not due to any departures from good and accepted medical practice by the staff of LHH" (*see* NYSCEF Doc. No. 75, para. 5). Specifically, Dr. Suggs finds that: (1) decedent's thrombosis in his right popliteal artery, found upon his presentment to LHH on April 5, 2016, did not indicate predisposal to clotting, since it is not uncommon for healthy patients to develop an occlusion after trauma; (2) it was within the standard of care for decedent to receive a daily aspirin and a prophylactic (as opposed to a therapeutic) dose of 5000 units of Heparin every 8 hours; (3) Dr. Suplee appropriately ordered a Doppler study of both lower extremities on April 9th in response

805088/2018 ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.
Motion No. 001 002 003

Page 7 of 12

7 of 12

[* 7]

to a fever of unknown etiology; (4) there was no need for serial Doppler studies in this case, in light of the negative study of April 9th; (5) the inability to visualize veins below decedent's right knee was of no consequence, since the proximal vein trees were patent bilaterally; (6) the slight fevers decedent developed on April 16, 2016 were attributable to his recent surgery; (7) atelectasis is common for post-operative patients and causes fever, tachycardia, and increased respiratory rate; (8) there was no indication for placement of an inferior vena cava ("IVC") filter during decedent's admission, as this treatment is primarily used in patients who do not respond to blood-thinning medications, and is "not without risks" (*id.*, para. 37), and (9) administration of tissue plasminogen activator ("tPA") was not available here due to the suddenness of the cardiac arrest, and the fact that decedent was freshly post-operative.

Critical care specialist, Dr. Salzman explains that the mild tachycardia experienced during the day of April 16th did not indicate a repeat Doppler, since pain and fever will cause tachycardia, and neither of decedent's thighs were swollen. Once the tachycardia entered the range of 130-150, the nursing and medical team then "appropriately considered a diagnosis of pulmonary embolism and gave empiric full dose anticoagulation with Lovenox, and promptly ordered and completed a CT angiogram" (*id.*, para. 9). Dr. Salzman found no reason for hospital staff to suspect a PE before 9:30 p.m. on April 16, 2016.

In support of his motion for summary judgment (Motion Seq. No. 003), Dr. Weiner submits the affirmations of orthopedic surgeon, George Zambetti, M.D. (*see* NYSCEF Doc. No. 93), critical care/intensivist, Brian Kaufman, M.D. (*see* NYSCEF Doc. No. 94), and vascular surgeon, Todd Berland, M.D. (*see* NYSCEF Doc. No. 95), all of whom agree that (1) Dr. Weiner appropriately fulfilled his duty of care, given his limited role as decedent's orthopedic trauma surgeon; (2) all DVT management was appropriately left to the critical care/intensivist with the

805088/2018 ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.
Motion No. 001 002 003

Page 8 of 12

8 of 12

[* 8]

vascular surgery service, and was in conformity with the standard of care applicable to Dr. Weiner, and (3) it was entirely appropriate for Dr. Weiner to rely on and defer VTE management to the critical care/intensivist and vascular surgery services. Dr. Kaufman adds that under the circumstances presented to Dr. Mo at 9:30 p.m. on April 16, 2016, it was expected that Dr. Mo would immediately contact the critical care/intensivist service and/or vascular surgery to defer all care to them, and that Dr. Mo, "acted as a scribe" in instating orders pursuant to Dr. Mina's directives, including the initiation of a CTA, PE protocol, Lovenox, and transfer of decedent to ICU. Dr. Weiner's experts concur that while Dr. Mo entered the orders, it was Dr. Mina who appropriately undertook VTE management including the diagnosis of a PE.

In opposition to the summary judgment motions made by LHH and Dr. Weiner, plaintiff submits the expert affirmations of an orthopedic surgeon,[5] a pulmonologist/critical care specialist (*see* NYSCEF Doc. No. 120), and a hospitalist (*see* NYSCEF Doc. No. 121). These experts are emphatic that a workup for PE should have been performed, at the latest, by 1:43 p.m. on April 16, 2016, when decedent's heart rate was 119-120 (at this time he was afebrile, so the elevated heart rate could not be explained as secondary to fever). Plaintiff's orthopedic surgeon opines "within a reasonable degree of medical certainty that had the defendants timely ordered the proper consultations and investigated the source of Mr. Dorfmann's tachycardia...it is very likely that the PE protocol would have started many hours earlier, resulting in an earlier PE workup, diagnosis and treatment, and therefore providing the best chance for survival and avoiding his untimely death" (*see* NYSCEF Doc. No. 119, para. 43). The expert is unwavering that the decedent's elevated HR was "highly suggestive of PE at least, by 1:00 p.m. on April 16, 2016, if not earlier...considering his medical and surgical history" (*id.*, para. 44), and that by not

---

5        NYSCEF Doc. No. 119, the expert affirmation of plaintiff's orthopedic surgeon, was previously referred to in relation to Dr. Cooper's summary judgment motion.

**805088/2018   ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.**                              **Page 9 of 12**
**Motion No.  001 002 003**

[* 9]

performing the CTA test until after 10:00 p.m., Mr. Dorfmann was deprived of the timely administration of therapeutic blood thinners to prevent further blood clots from forming and lodging into the lungs: "[c]onsequently, the delay in starting the PE protocol very likely resulted in recurrent emboli, progressive right ventricular failure, and the untimely death of Mr. Dorfmann (*id.*). Finally, plaintiff's orthopedic surgeon opines that given Mr. Dorfmann's surgical history on his right lower extremity and his long period of immobility, Dr. Weiner, as the attending in charge responsible for supervising orthopedic residents (including Dr. Mo and other providers in the department under his supervision), and the LHH nursing staff, departed from the standard of care by (1) failing to properly monitor decedent throughout the evening of April 15 and April 16, given his persistent tachycardia; (2) failing to commence the PE protocol at around 1:00 –2:00 p.m. on April 16th, which would have allowed for a timely administration of a therapeutic dose of Lovenox, or the tissue plasminogen activator ("tPA"; [*id.*, para. 48]); (3) failing to alert a physician of Mr. Dorfmann's persistent tachycardia (*id.*, para. 53), and (4) failing to maintain proper and accurate documentation in the medical chart (*id.*, para. 54).

Plaintiff's critical care and hospitalist experts concur, adding that the additional blood clots which likely formed the saddle PE, "could have been prevented had the patient been diagnosed and treated around 1:00 p.m., 1:43 p.m., 2:47 p.m., 5:20 p.m. or even 8:18 p.m. when his heartrate was 127...even an hour very likely would have made a difference in the patient's outcome" (*see* NYSCEF Doc. No. 120 para. 52), and further, that the defendants "should have requested a consultation from hematology, in light of the patient's thrombosed infrapatellar popliteal artery, which was indicative of a blood issue" which "more likely than not would have identified his prothrombin factor II mutation, that further increased the risk of a pulmonary embolism due to a genetic predisposition to form clots" (*see* NYSCEF Doc. No. 121, para. 42).

805088/2018   ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.                    Page 10 of 12
Motion No.  001 002 003

10 of 12

[* 10]

The Court finds that LHH and Dr. Weiner have met their *prima facie* burdens of entitlement to judgment as a matter of law by submitting the factually based and detailed affirmations of Dr. Suggs, Dr. Salzman, Dr. Zambetti, Dr. Kaufman, and Dr. Berland. In opposition, however, the plaintiff has successfully rebutted these movants' showing through submission of her own expert affirmations, which raise triable questions of fact as to whether, *inter alia,* the saddle pulmonary embolism was preventable if a PE protocol been established before 9:30 p.m. on April 16, 2016. "The medical experts' conflicting opinions...raise issues of fact that must be resolved at trial" (*Hendricks v. Transcare New York, Inc.,* 158 AD3d 477 [1st Dept. 2018]). As such, the motions for summary judgment by Lenox Hill Hospital and Dr. Weiner are denied.

The Court has considered the defendants' remaining contentions, including LHH's causation argument, and finds them unavailing.

Accordingly, it is

ORDERED that the motion for summary judgment of the defendant Herbert J. Cooper, M.D. (Motion Seq. No. 001), is granted in its entirety; and it is further

ORDERED that the motion for summary judgment of the defendant Lenox Hill Hospital (Motion Seq. No. 002) is granted to the extent that plaintiff's "Second" "Third" and "Fourth" causes of action are severed and dismissed, and the balance of the motion is denied; and it is further

ORDERED that the motion for summary judgment of the defendant Lon S. Weiner, M.D. (Motion Seq. No. 003) is granted to the extent that plaintiff's "Second" "Third" and "Fourth" causes of action are severed and dismissed, and the balance of the motion is denied; and it is further

805088/2018   ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.
Motion No.  001 002 003

Page 11 of 12

ORDERED that the Clerk is directed to enter judgment in favor of Dr. Cooper dismissing the complaint and all cross claims as asserted against him; and it is further

ORDERED that the Clerk is directed to enter judgment in favor of Lenox Hill Hospital and Dr. Weiner severing and dismissing plaintiff's "Second" "Third" and "Fourth" causes of action; and it is further

ORDERED that all parties shall appear for a pre-trial virtual conference via Microsoft Teams on **October 30, 2024, at 12:00 p.m.**

| | |
|---|---|
| _____8/12/2024_____ | |
| DATE | HON. JUDITH N. MCMAHON |

CHECK ONE:   □ CASE DISPOSED   [X] NON-FINAL DISPOSITION

□ GRANTED   □ DENIED   [X] GRANTED IN PART   □ OTHER

APPLICATION:   □ SETTLE ORDER   □ SUBMIT ORDER

CHECK IF APPROPRIATE:   □ INCLUDES TRANSFER/REASSIGN   □ FIDUCIARY APPOINTMENT   □ REFERENCE

Hon. Judith N. McMahon
J.S.C.

805088/2018   ODNORALOV, ALEXANDRA vs. WEINER, M.D., LON S.
Motion No.  001 002 003

Page 12 of 12

12 of 12