Labby v Cummings (2026 NY Slip Op 01129)

Labby v Cummings

2026 NY Slip Op 01129

Decided on February 26, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 26, 2026

Before: Kennedy, J.P., González, Rodriguez, Chan, JJ. 

Index No. 805428/17|Appeal No. 5944-5945|Case No. 2024-05183, 2025-00701|

[*1]Rebecca Labby et al., Plaintiffs-Respondents,
vAllegra Cummings, M.D., et al., Defendants, Mala Varma, M.D., et al., Defendants-Appellants. 

Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Judy C. Selmeci of counsel), for Mala Varma MD, appellant.
Shaub Ahmuty Citrin & Spratt, LLP, Lake Success (Timothy M. Gallagher of counsel), for Alex Spyropoulos MD and Lenox Hill Hospital, appellants.
Kramer, Dillof, Livingston & Moore, New York (Matthew Gaier of counsel), for respondents.

Order, Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about July 12, 2024, which, to the extent appealed from, denied so much of the separate motions of defendant Mala Varma, M.D. and defendants Alex Spyropoulos, M.D. and Lenox Hill Hospital (together, the LHH defendants), for summary judgment dismissing plaintiffs' medical malpractice claim as against them, unanimously affirmed, without costs. Order, same court and Justice, entered on or about January 16, 2025, which granted plaintiffs' motion for leave to reargue, and, upon reargument, denied so much of Dr. Varma's motion for summary judgment dismissing plaintiffs' loss of services claim, unanimously affirmed, without costs.
"A defendant in a medical malpractice action demonstrates prima facie entitlement to summary judgment by showing either that he or she did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries. Once a defendant has established prima facie entitlement to summary judgment, the burden shifts to plaintiff to rebut the prima facie showing via medical evidence attesting that the defendant departed from accepted medical practice and that such departure was a proximate cause of the injuries alleged" (Ducasse v New York City Health & Hosps. Corp., 148 AD3d 434, 435 [1st Dept 2017] [internal quotation marks and citations omitted]; see Roques v Noble, 73 AD3d 204, 206 [1st Dept 2010]). In opposing a motion for summary judgment, it is incumbent on a plaintiff's expert to specifically address defendants' experts' allegations and explain his or her reasoning, "relying on specifically cited evidence in the record" (Tsitrin v New York Community Hosp., 154 AD3d 994, 996 [2d Dept 2017] [internal quotation marks omitted]; see also Rong Lan Lin v Wong, 202 AD3d 406, 408 [1st Dept 2022][medical malpractice claim was properly dismissed where "expert set forth only general conclusions, misstatements of evidence and unsupported assertions"]).
Both Dr. Varma and the LHH defendants satisfied their prima facie burden by submitting their respective expert hematologists' detailed explanations of what the applicable standard of care for antiphospholipid syndrome (APS), plaintiff's condition, was, why that was the applicable standard of care, how Dr. Varma and Dr. Spyropoulos's prescription of the blood thinner Xarelto (rivaroxaban) instead of Coumadin (warfarin) did not depart from the applicable standard of care, and why any departure by Dr. Varma or Dr. Spyropoulos was not a proximate cause of plaintiff's claimed injuries (see e.g. Buckner v St. Luke's Roosevelt Hosp. Ctr., 103 AD3d 535, 535 [1st Dept 2013]).
However, plaintiffs raised an issue of fact as to whether Varna and the LHH defendants departed from the standard of care by submitting the opinion of their own expert hematologist, who opined that Coumadin was the "gold standard," "front-line" medication for treating APS, especially for a patient like plaintiff, who not only had APS but also was at the highest risk for developing clots. Plaintiffs' expert further opined that Dr. Varma and Dr. Spyropoulos were incorrect as to the state of the medical literature about the safety and efficacy of drugs like Xarelto, and that the literature was in fact far more equivocal and inconclusive than either of them suggested. Indeed, plaintiffs' expert stated that some of the literature, which Dr. Varna and Dr. Spyropoulos admitted they were aware of, even went so far as to suggest that drugs like Xarelto were more dangerous and had a higher risk of clotting in patients like plaintiff than Coumadin. Given this uncertainty in the field, plaintiffs' expert opined that the applicable standard of care required that physicians treating high-risk APS patients not resort to novel drugs like Xarelto, even if not doing so would be contrary to the patient's desires.
Contrary to Dr. Varma's argument, plaintiffs and their expert do not impermissibly seek to supplant "the reasonably prudent doctor standard" in medical malpractice actions (Nestorowich v Ricotta, 97 NY2d 393, 398 [2002]) with a doctrine that views the relevant medical literature as defining the applicable standard of care (cf. Halls v Kiyici, 104 AD3d 502, 504-505 [1st Dept 2013]). Rather, plaintiffs and their expert specifically responded to defendants' experts' opinion that Dr. Varma and Dr. Spyropoulos properly relied on the available literature when determining that Xarelto was a safe course of treatment for high-risk APS patients, and argued that the applicable standard of care required a more comprehensive and critical examination of the literature than either Dr. Varma or Dr. Spyropoulos performed. Thus, the parties' "dueling expert opinions raise issues of fact and credibility that cannot be resolved on a motion for summary judgment" (Diaz v NYU Langone Med. Ctr., 192 AD3d 534, 536 [1st Dept 2021]).
Since defendants were properly denied summary judgment dismissing the medical malpractice claim as against them, the motion court should not have dismissed plaintiff Scott Labby's derivative loss of services claim, and the court correctly reinstated it upon reargument (see e.g. Elias v City of New York, 173 AD3d 538, 539 [1st Dept 2016]; Vaynshelbaum v City of New York, 140 AD3d 406, 407 [1st Dept 2016]).
We have considered defendants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 26, 2026