■ CHRISTINE GARDNER, Appellant, v TODD M. WIDER, Respondent. [821 NYS2d 74]—

Judgment, Supreme Court, New York County (Joan B. Carey, J.), entered May 4, 2005, which granted defendant's motion for summary judgment dismissing the complaint for medical malpractice based on lack of informed consent, unanimously affirmed, without costs.

Plaintiff commenced this action for medical malpractice and lack of informed consent in relation to various plastic surgery procedures performed by defendant. Defendant, pursuant to

CPLR 3101, served a demand for expert disclosure with his answer. Plaintiff never responded to the demand. Nevertheless, after some discovery was conducted and a note of issue filed, the court set a trial date of January 13, 2004. Plaintiff was ordered to serve expert disclosure no later than December 11, 2003.

On January 6, 2004, four years after she had initiated the action, plaintiff still had not produced an expert witness, and defendant moved for summary judgment dismissing the complaint on the grounds that plaintiff could not establish a prima facie case.

On January 12, the day before trial, plaintiff informed the court that she was prepared to proceed to trial using defendant as her expert. The court granted defendant's motion for summary judgment holding that defendant would not provide plaintiff with the expert testimony necessary to avoid dismissal of her case. For the reasons set forth below, this Court affirms the dismissal of the complaint against defendant.

Plaintiff claims she suffered hair loss following a face-lift performed by defendant doctor. She alleges defendant never informed her that hair loss was a risk of the plastic surgery procedure, and that he altered the consent form after she signed it to include the risk of hair loss.

The record establishes that the consent form was signed by both plaintiff and defendant as well as a witness. Typed on the form are the general risks of plastic surgery. The form also includes space for defendant to handwrite additional risks associated with a patient's particular procedure. On plaintiff's consent form, defendant handwrote "numbness of face, paralysis of face, scarring, loss of skin, loss of hair, loss of belly button" and "numbness of belly" as possible risks of her procedures.

Plaintiff claims that a period after "paralysis of face" is evidence that defendant added "scarring, loss of skin, loss of hair, loss of belly button" and "numbness of belly" to the consent form after plaintiff signed the form.

Defendant claims that plaintiff was aware of the hair loss risk from the beginning. At his deposition, defendant testified that on plaintiff's first visit to his office, he advised her of the risk of hair loss as well as the other risks associated with her procedures. Further, defendant testified that the risks of plaintiff's procedures were reviewed during the additional consultations that followed her initial visit.

Plaintiff, on appeal, asserts that there is a factual issue to be

resolved as to whether defendant advised her of the risk of hair loss. However, plaintiff's claim cannot survive on this basis. Indeed, it cannot survive even if we accept as true plaintiff's allegations that defendant doctor did not verbally disclose the risk of hair loss prior to the procedure and/or that he altered the consent form after plaintiff signed it.

In order to make out a prima facie case of lack of informed consent, plaintiff is required to provide more. Pursuant to CPLR 4401-a, a plaintiff's claim for medical malpractice based on lack of informed consent must be dismissed if the plaintiff fails to adduce expert testimony establishing that the information disclosed to the patient about the risks inherent in the procedure is qualitatively inadequate (*see Sallam v New York Hosp.*, 155 AD2d 389 [1989], *lv denied* 75 NY2d 712 [1990]; *Gonzalez v Moscarella*, 142 AD2d 550 [1988]). In other words, plaintiff could not defeat the requirement of CPLR 4401-a even if she were able to establish that the consent form was altered and/or that defendant did not verbally inform her of the risk of hair loss.

Plaintiff further argues that the requirement may be satisfied by using defendant doctor as her expert, and that the motion court erred in not permitting her to do so. Relying on *McDermott v Manhattan Eye, Ear & Throat Hosp.* (15 NY2d 20 [1964]), she asserts that it is "hornbook law that a plaintiff may call the defendant as his/her expert." While plaintiff's assertion is correct, in her case the reliance is misplaced. In *McDermott*, the Court of Appeals observed that it is often difficult to obtain an expert to "condemn in open court" the practices of his colleague (*id.* at 27). The Court held that a defendant doctor in a medical malpractice action may be called to testify to the facts of the case and to his "knowledge of the proper medical practice and his possible awareness of his deviation from that standard" (*id.*). The Court further held that "no . . . burden or unfairness is occasioned by the practice of compelling a doctor, who is actually a defendant in the malpractice action, to testify as an expert" (*id.* at 29).

However, in the case at bar, plaintiff cannot advance her position by calling defendant as her expert witness since the expert testimony elicited by plaintiff must "indicate that plaintiff's consent was not informed" (*Sallam v New York Hosp.*, 155 AD2d at 390). Were plaintiff permitted to call defendant as an expert witness, he would have to testify, pursuant to CPLR 4401-a, as to the "qualitative insufficiency" of the consent obtained by him. The motion court thus properly observed, "he [defendant] would have to testify that the consent was inade-

quate under the circumstances, and he would have to testify that he, defendant doctor, party in this action, took that consent when knowing full well that it was not a fully informed consent under the circumstances."

The case at bar is similar to *Bauernfeind v Albany Med. Ctr. Hosp.* (195 AD2d 819 [1993], *appeal dismissed and lv denied* 82 NY2d 885 [1993]). In that case, the plaintiff attempted to call defendant doctor to testify to the inadequacy of the consent obtained by him. The trial court dismissed the action. When the plaintiff moved to vacate the court's order, the defendant submitted an affidavit stating he was familiar with the risks, benefits, and alternatives that should have been disclosed to the plaintiff prior to the procedure, that he did not deviate in the standard of care with respect to the disclosures given to the plaintiff, and that this would be his testimony at trial. In view of this affirmation, the court held that the plaintiff's cause of action was subject to dismissal because the plaintiff had failed to procure expert testimony on the issue of informed consent pursuant to CPLR 4401-a.

Likewise, in this case, nothing in defendant's deposition testimony suggests that he would testify to the inadequacy of plaintiff's consent. In fact, defendant's deposition plainly states that he *did* discuss all the risks of plastic surgery with plaintiff, including the risk of hair loss resulting from her face-lift. It is therefore clear from defendant's deposition that if called as an expert witness, he would testify that the consent he obtained from plaintiff was adequate. To hold otherwise would require that we accept the entirely unlikely possibility of a Perry Mason moment where defendant under cross-examination repudiates his entire deposition testimony. We decline to indulge in such speculation. Concur—Buckley, P.J., Andrias, Marlow, Nardelli and Catterson, JJ. [*See* 1 Misc 3d 909(A), 2004 NY Slip Op 50013(U) (2004).]