| |
|---|
| **Trager v Bryant Park Endodontics** |
| 2024 NY Slip Op 33043(U) |
| August 27, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 805320/2020 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   <u>HON. JOHN J. KELLEY</u>

*Justice*

PART 56M

--------------------------------------------------------------------------------X

VICTORIA TRAGER,

Plaintiff,

- v -

BRYANT PARK ENDODONTICS, YOUNG BUI, D.D.S.,
P.C., and YOUNG BUI, DDS,

Defendants.

--------------------------------------------------------------------------------X

INDEX NO.          805320/2020

MOTION DATE        07/12/2024

MOTION SEQ. NO.        001

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

## I.      INTRODUCTION

In this action to recover damages for dental malpractice, based on alleged departures from good and accepted dental practice, and for lack of informed consent, the defendants move pursuant to CPLR 3212 for summary judgment dismissing the complaint. The plaintiff opposes the motion. The motion is denied.

## II.      FACTUAL BACKGROUND

The crux of the dispute is that the defendants allegedly committed dental malpractice by failing properly and adequately to diagnose the plaintiff's dental condition, negligently administering an injection of local anesthetic, and negligently performing root canal therapy, as well as failing to inform the plaintiff of the risks and benefits of the procedure, and reasonable alternatives thereto. As a consequence of these allegedly wrongful acts, the plaintiff asserted that she sustained bone infections in her mouth, the need to undergo drainage procedures, and the need for the extraction of teeth 29 and 30. She claimed that she was required to endure a

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No.  001

Page 1 of 26

[* 1]

four-day hospital admission, and sustained paresthesia, dysesthesia, numbness in her jaw and face, and loss of sensation in her face, and will be required to undergo future dental treatment.

On December 31, 2019, the plaintiff visited dentist Kristin Harrison, D.M.D., at Madison Dental Group in Manhattan. At this visit, Dr. Harrison noted that the plaintiff had pain at tooth 30 upon tapping. Dr. Harrison referred the plaintiff to the defendant endodontist Yung Bui, D.D.S., in Manhattan, and his practice, the defendant Yung Bui, D.D.S., P.C., doing business as Bryant Park Endodontics, for an evaluation to ascertain if root canal therapy was warranted with respect to that tooth.

In connection with the instant dispute, the plaintiff visited Bui on two occasions, the first on January 2, 2020 and the second on January 6, 2020. At the January 2, 2020 visit, the plaintiff provided Bui with a dental and medical history, reporting that she had high blood pressure, ulcerative oral lichen planus, allergies, and adverse reactions to penicillin, sulfa drugs, and adhesive tape. She further reported that she was a breast cancer survivor and had undergone radiation treatments. At that visit, the plaintiff also reported having pain in her lower right jaw, upon which Bui conducted a focused exam of the lower right quadrant of the plaintiff's mouth and teeth, which the defendants asserted specifically involved an examination of teeth 29, 30 and 31, that Bui performed percussion and chewing tests on all of those teeth, and endo-ice testing on tooth 30, and that he took a pre-operative periapical x-ray. The plaintiff asserted that Bui did not properly or fully examine teeth 29 and 31. Bui concluded from these tests that teeth 29 and 31 were asymptomatic and free from pain, but that the plaintiff experienced pain to tooth 30 when she chewed on it or percussion tests were administered to it. With respect to the endo-ice test on tooth 30, Bui applied a cold spray to a Q-tip, and thereafter placed and held it on the surface of tooth 30 for several seconds, upon which he concluded that tooth 30 was non-vital. He diagnosed the plaintiff with acute periodontitis at tooth 30, with a necrotic pulp.

At the January 2, 2020 visit, Bui informed the plaintiff that she required root canal therapy at the site of tooth site 30, and intended to perform the procedure on that date.

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**
**Page 2 of 26**

According to the defendants, prior to the procedure, the plaintiff was provided with a consent form entitled "Consent for Endodontic Therapy," and inscribed her signature thereon on. The plaintiff asserted that her prior written consents that she gave to Bui for root canal therapy procedures on teeth 2, 4, and 20 in 2015 did not apprise her of the risks involved in treating tooth 30, let alone teeth 29 and 31, that the consent form that she did sign with respect to tooth 30 did not apprise her of any warnings concerning potential nerve injuries due to injections, and that the treatment undertaken went beyond the scope of the warnings that Bui actually provided.

That same day, Bui performed a root canal therapy procedure upon the plaintiff. He first administered a "local anesthetic and/or a nerve block." Bui's records reflected that tooth 30 was isolated with the use of a rubber dam during the course of the root canal procedure. Upon his surgical entry into tooth 30, he encountered necrotic pulp in the pulp chamber of the tooth, and began to remove necrotic pulp. After removal of that pulp, he obtained access to the canals of the tooth. Bui's records reported that tooth 30 had a total of three canals---a distal canal, a mesial buccal canal, and a mesial lingual canal---while the plaintiff alleged that it actually had four canals. Employing files of varying sizes, Bui cleaned and shaped the three canals that he had identified to a 30/.06 taper. Bui irrigated the canals with sodium hydrochlorite and 2% chlorhexidine, then placed a gutta percha sealant in the canals, and thereafter closed access to the tooth with cotton and cavit paste. The plaintiff alleged that Bui did not treat the fourth canal that her expert had identified. According to the defendants, in ascertaining the working lengths of the canals in tooth 30, Bui utilized an apex locator to determine the position of the apical constriction and, thus, the length of the root canal spaces. Employing this method, he determined that the working length of the mesial buccal canal was 21 millimeters (mm), that of the mesial lingual canal was 22 mm, and that of the distal canal was 23 mm.

Upon completion of the root canal procedure, Bui prescribed the plaintiff Norco 7.5 mg-325 milligrams (mg) oral tablets for pain and Etodolac 400 mg oral tablets, a nonsteroidal anti-inflammatory (NSAID) also used to treat mild to moderate pain.

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                     Page 3 of 26
 **Motion No.  001**

[* 3]

3 of 26

The plaintiff returned to Bui's office on January 6, 2020, complaining of pain in, and swelling of, her lower right jaw, as well as numbness of her lower right lip and chin. Bui conducted an examination of the lower right quadrant of her mouth, consisting of both diagnostic/clinical tests and radiology studies in the form of a single peri-apical x-ray and a cone beam computed tomography (CBCT) scan. Bui tested tooth 30 for chewing and performed a percussion test on it, both of which, according to the defendants, revealed "slight" tenderness. Bui concluded that these were "normal" findings because the plaintiff had only undergone root canal therapy on that tooth four days earlier. The plaintiff contested this conclusion, asserting that the findings should not have been "normal," as the root canal on that tooth had not been conducted properly. Bui also performed chewing and percussion testing on tooth 29, which the defendants asserted had resulted in the plaintiff's expression of pain, an allegation that the plaintiff challenged, asserting instead that this part of her mouth was instead numb. Bui noted the presence of a palpable mass over the apex of tooth 29, but the plaintiff alleged that he never informed her of that finding. Bui performed endo-ice testing on that tooth, but since, according to the defendants, it did not respond to the endo-ice test, he concluded that the test was indicative of the tooth being nonvital, and allegedly informed the plaintiff that the pulp in tooth 29 was necrotic, thus causing an infection and concomitant swelling. The plaintiff asserted that this allegation was untrue, and that tooth 29 was not necrotic, but became numb due to the negligent injection of the nerve block on January 2, 2020, while the defendants alleged that Bui attributed the plaintiff's complaints of numbness to an infection placing pressure on a nerve, and that he recommended performance of root canal therapy on tooth 29.

The plaintiff declined to undergo the root canal procedure with Bui. According to the defendants, Bui prescribed the plaintiff the antibiotic Clindamycin, at a dosage of 300 mg via oral capsules, and allegedly advised her to get a second opinion from another endodontist. The plaintiff alleged that Bui did not prescribe antibiotics but that, instead, she already was taking

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

**Page 4 of 26**

4 of 26

antibiotics that had been prescribed by personnel at an urgent care facility that she had visited in the days prior to January 6, 2020.

On January 7, 2020, the plaintiff visited oral surgeon Harrison Chen, DDS, for evaluation of right facial swelling, and he performed an incision and drainage. On January 10, 2020, the plaintiff again visited Dr. Chen, at which time he extracted tooth 30 after characterizing that tooth as being fractured and non-restorable. Upon the extraction of the tooth, Dr. Chen placed bone graft material and a membrane at tooth site 30. The plaintiff nonetheless continued to experience pain in the lower right quadrant of her mouth. On January 20, 2020, she returned to Dr. Chen, who examined and took a CT scan of tooth 29, after which he determined that the tooth was mobile, infected, and evidenced periapical pathology, and thus extracted it.

The plaintiff thereafter made complaints of paresthesia, dysesthesia, numbness, and loss of sensation to her right lower lip and the right side of her chin, and sought treatment with oral and maxillofacial surgeon Salvatore L. Ruggiero, DMD, M.D. beginning on February 27, 2020. The defendants asserted that Dr. Ruggiero determined that, in light of the findings of a July 29, 2020 neurosensory examination, the plaintiff did not require medical or additional surgical therapy. While they further asserted that his records reflected gradual and steady improvement of the plaintiff's condition, and that his notes did not reflect any finding of a V3 hypoesthesia, the plaintiff countered that there had and has not been any improvement to her lip, lower jaw, or internal jaw. According to the defendants, when Dr. Ruggiero saw the plaintiff on March 17, 2021, he noted that she had reported a significant return of sensation in her lip and chin and had no pain, with only a slight abnormal sensation in the vermillion region. As the defendants described it, Dr. Ruggiero's findings with respect to the neurosensory exam revealed "soft touch and direction determination were intact in the right lip and chin with no evidence of any stimulus evoked pain." The plaintiff, however, reasserted that she has not experienced any improvement to her lip, the lower jaw, or internal jaw.

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No.  001

Page 5 of 26

5 of 26

On August 11, 2021, the plaintiff again returned to Dr. Chen's office for the placement of implants at tooth sites 29 and 30. Although Dr. Chen made two attempts at placing implants at both of those sites, the implants failed as of October 6, 2021, and were removed on that date.

### III.   THE PLAINTIFF'S CONTENTIONS

In her complaint, the plaintiff alleged that the defendants treated her in a "negligent, unskillful and careless manner so as to cause personal injury, pain, suffering and other attendant damage." She further alleged that the defendants

> "were negligent, unskillful, and incompetent in that . . .they failed to properly and adequately diagnose the Plaintiff's dental condition; failed to take the proper tests and/or x-rays to treat the Plaintiff's condition or, in the event that such test and/or x-rays were taken, in failing to use the requisite skill and/or judgment to diagnose and treat the Plaintiff's dental condition; in negligently performing the surgical treatment; in negligently monitoring the treatment; in negligently failing to refer Plaintiff to competent specialists for evaluation; in negligently failing to provide follow up care; in being careless and negligent in administering local anesthetic injections; in failing to recognize the Plaintiff's reaction to an injection; in failing to take the Plaintiff's reaction into account when giving the injection; in causing the Plaintiff to sustain paraesthesia, dysesthesia, numbness and/or loss of sensation in her face; in causing the Plaintiff to sustain permanent nerve damage; in causing the Plaintiff to suffer infection; and in causing the Plaintiff to suffer serious and permanent injury, pain and discomfort."

In addition, the plaintiff alleged that the defendants failed to obtain her fully informed consent to the root canal therapy procedure, in that they failed to advise her of the alternatives to the treatment that they did render, and failed to advise her of the reasonably foreseeable risks and complications involved, as reasonable dental practitioners would have disclosed, in a manner that permitted her to make a knowledgeable evaluation regarding said treatment. In her bill of particulars, the plaintiff reiterated, almost verbatim, the specific allegations of negligence set forth in her complaint, and alleged that these departures from good and accepted dental care caused her to sustain paresthesia, dysesthesia, numbness and/or loss of sensation in her face, permanent nerve damage, and severe bone infections in her mouth that required various draining procedures, and ultimately caused her to have teeth 29 and 30 extracted, which, in turn required her to be admitted to NYU Langone Hospital for approximately four days. She further

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                    **Page 6 of 26**
**Motion No.  001**

6 of 26

[* 6]

asserted that the injuries that she sustained as a consequence of the defendants' alleged departures from good and accepted care will require future dental and medical treatment.

## IV. THE SUMMARY JUDGMENT MOTION

In support of their motion, the defendants submitted the pleadings, the bill of particulars, the transcripts of the parties' deposition testimony, relevant dental and medical records, a statement of allegedly undisputed material facts, case management orders, an attorney's affirmation, and the expert affirmation of dentist Theodore J. Jenal, D.D.S.

Dr. Jenal first described the examination and testing generally employed by dentists who are attempting to ascertain whether a tooth is viable and can be saved with root canal therapy, or whether it is non-viable and requires extraction. He opined that Bui properly evaluated teeth 29, 30 and 31 on January 2, 2020 using accepted dental practices, including chewing and percussion testing, and that he exercised sound dental judgment by then proceeding to perform an endo-ice test on tooth 30. Dr. Jenal concluded that Bui acted reasonably and exercised sound dental judgment on January 2, 2020 by treating only tooth 30, in light of the results of the diagnostic and clinical tests performed and all other findings that Bui made upon his examination of the plaintiff. Dr. Jenal further opined that Bui obtained adequate information from his testing and examination, and properly diagnosed and evaluated the plaintiff's condition on January 2, 2020.

Dr. Jenal characterized as "unfounded" and "meritless" the plaintiff's contentions that Bui failed properly to diagnose her dental condition of pain with which she presented, failed to perform proper tests and x-rays to treat that condition, and failed to evaluate her medical condition before he performed the root canal therapy at tooth site 30 on January 2, 2020. He further averred that the plaintiff's allegations that the defendants negligently administered local anesthetic injections, and failed to recognize the plaintiff's reaction to those injections, also were meritless and lacked any basis. As Dr. Jenal explained it,

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                    **Page 7 of 26**
  **Motion No.  001**

7 of 26

[* 7]

"[o]nce confirming the offending tooth in the lower right quadrant of the mouth as being # 30 Dr. Bui administered a nerve block. Nerve blocks are administered by means of an injection. The role of a nerve block is to override the normal sensation of pain during procedures such as root canals. Administration of a nerve block is required to perform many dental procedures including root canals. Based on the dental records reviewed and the testimony provided by the plaintiff and Dr. Bui no complications occurred at the time the nerve block(s) was administered prior to the commencement of the root canal on tooth # 30."

Dr. Jenal further concluded that there was no evidence to suggest that injuries to the inferior alveolar nerve or mental nerve occurred during, or as a result of, the root canal procedure that Bui performed, and no evidence to suggest the administration of an anesthetic agent or nerve block had been performed in a negligent manner. In any event, he nonetheless opined that the occurrence of an injection injury, by itself, does not constitute a departure from the standard of care, since "the treating dentist cannot directly visualize the exact location of the nerves" and "the location and or position of nerves vary from patient to patient." Dr. Jenal further asserted that was it also was not a departure from the standard of care to omit a discussion of the possibility of a nerve injury from an injection, sinch "such injuries are so rare and due to the fact there are no valid alternatives to achieve anesthesia prior to performing a root canal." He also explained that, if a nerve injury had been caused by an errant nerve block injection, "the plaintiff would have had an immediate reaction at the time the needle made contact with any of the nerves located at the site of the injection," and that this did not occur here.

With respect to the root canal therapy itself, Dr. Jenal asserted it was performed in the "typical" fashion and in accordance with generally accepted methods utilized by dental professionals, with no deviations from the standard of care. In this respect, he asserted that, not only did Bui take all necessary steps in completing the root canal procedure, "he took safety measures such as the use of a dental dam and use of an apex locator" which respectively are employed to prevent contaminants from entering the tooth, and to determine the working lengths of the canals, thus preventing files from going past the apex of a tooth's root. Dr. Jenal opined that Bui made proper entry into tooth 30, more specifically into the pulp chamber of the

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL                    Page 8 of 26
Motion No.  001

8 of 26

[* 8]

tooth, at which time he encountered necrotic pulp.   As he explained, it upon removal of the pulp, Bui obtained access to the canals.  Dr. Jenal concluded that Bui correctly identified the presence of three canals, consisting of a mesial lingual canal, a mesial buccal canal, and a distal canal, and correctly identified the number of roots associated with tooth 30.  He further opined that Bui satisfied the appropriate standard of care in the manner in which he filed out and shaped the canals, irrigated the canals, obturated the canals with gutta percha, and closed the canals with cotton and cavil paste.  Dr. Jenal noted that a post-operative radiograph taken on January 2, 2020 revealed three completely obturated and or filled canals, with no overfill, from the top of the tooth to the apex of the tooth, which indicated that the root canal therapy procedure that Bui performed had been completed properly and within the standard of care, and further indicated that he did not proximately cause any of the injuries claimed by the plaintiff.

Dr. Jenal went on to conclude that the any claimed paresthesia, dysesthesia, numbness, and loss of facial sensation were not caused by Bui's root canal procedure, his mishandling of any endodontic instruments, or the administration of a nerve block.  In this respect, he noted that Dr. Ruggiero found that there was no evidence that Bui "over-instrumented" the canals of tooth 30 or that he errantly extended past the tooth apex into the mandibular nerve canal with any type of instrumentation.  Hence, Dr. Jenal opined that the injuries claimed by the plaintiff were not proximately caused by anything that Bui did or did not do.  Rather, Dr. Jenal asserted that the numbness and swelling that the plaintiff complained of on January 6, 2020 was the result of an infection at tooth site 29 that inflamed the area surrounding the mental nerve.  He concluded that neither that infection nor the swelling was related to or caused by any of the dental treatment that Bui rendered to tooth 30 on January 2, 2020.

Dr. Jenal characterized the follow-up care that Bui provided as within the standard of care, as there was no need for him, as an endodontist, to refer the plaintiff to any other dentist or dental specialist at any time that she was under his care.  As he explained it, however, Bui nonetheless advised the plaintiff on January 6, 2020 to get a second opinion from an

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                    **Page 9 of 26**
  **Motion No.  001**

9 of 26

[* 9]

endodontist, inasmuch as she was unwilling to heed his advice to undergo root canal treatment on tooth 29. He accepted Bui's contention that he, and not an urgent care facility, prescribed antibiotics to the patient, and concluded that this treatment was appropriate. Dr. Jenal also approved of Bui's performance of a CBCT scan and a periapical X-ray on January 6, 2020, as well of his performance of chewing, percussion, and endo-ice tests in order to assess the nature and source of the plaintiff's complaints. In fact, Dr. Jenal opined that the plaintiff's refusal to undergo root canal therapy on tooth 29 in a seasonable fashion caused the infection in that tooth to spread, and necessitated its later extraction.

With respect to the consent form executed by the plaintiff on January 2, 2020, and other information that Bui allegedly provided to the plaintiff. Dr. Jenal concluded that the consent given by the plaintiff was fully informed, and was qualitatively sufficient.

In opposition to the motion, the plaintiff submitted a counter statement of facts, an attorney's affirmation, the expert affidavit of endodontist Marc P. Gimbel, D.M.D., a copy of relevant imaging, the plaintiff's deposition transcript, and decisions by other trial courts in dental malpractice actions. The plaintiff otherwise relied on the submissions made by the defendants.

In his affidavit, Dr. Gimbel asserted that Bui departed from good and accepted dental and endodontic practice in examining and treating the plaintiff, and that his departures caused or contributed to the plaintiff's injuries. According to Dr. Gimbel, the most significant breach of the standard of care was that Bui, in treating the plaintiff, failed properly to assess the condition of tooth 30, inasmuch as he treated only three canals in this tooth, whereas there actually were four. Dr. Gimbel thus asserted that Bui negligently failed to detect the fourth canal and, hence, left it untreated. As Dr. Gimbel framed it, "[t]his is a violation of the standard of care in diagnosing her condition, in treating her condition, in conducting follow-up care, and in advising her on subsequent treatment. This caused various problems for Ms. Trager, including the loss of tooth number 30."

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
  **Motion No. 001**

**Page 10 of 26**

[* 10]

10 of 26

Dr. Gimbel explained that the proper method for ascertaining whether root canal therapy is indicated and warranted, and on which tooth or tooth site it is warranted, consisted of two main components---pulp sensibility tests and periapical tests. As he described it, pulp tests involve methods used to determine the vitality of the pulp. Dr. Gimbel further explained that traditional pulp tests assess the neural response of the pulp, either directly or indirectly, and include the electric pulp test (EPT), as well as tests that apply cold and hot temperatures. He asserted that the periapical tests include palpation and percussion and that, although these tests do not provide information about the pulp, such as vitality or necrosis, they indicate whether there is inflammation in the periapical tissues. Dr. Gimbel averred that clinicians use palpation to test for periapical inflammation or infection, while the percussion test is done by tapping the edge of the patient's tooth with an instrument and recording the patient's responses to see if the periodontal ligament is inflamed. He further asserted that a transilluminating light test and a "tooth slooth," (a plastic tool to detect cracked teeth), should have been employed to detect microfractures, while a periodontal probing instrument should have been employed to detect any narrow deep pockets associated with microfractures.

As Dr. Gimbel noted, there was a section in Bui's recordkeeping software form, entitled "Multi Tooth Testing," in which the results of all of these types tests could be recorded, "yet there are no results recorded," which suggested to Dr. Gimbel that Bui never performed those tests. Dr. Gimbel opined that "it is best to perform all these tests on a patient. Performing the full array of tests gives an endodontist the greatest chance of properly diagnosing the patient's condition." As Dr. Gimbel characterized it, Bui undertook only "the bare minimum of testing," and he concluded that there was a "real chance" that Bui would properly have diagnosed problems with tooth 29 had he done the full range of available tests. Dr. Gimbel continued that, "[f]or example, cold tests can be ineffective and EPT's can be positive, indicating vitality in a questionable tooth. In Ms. Trager's case, the conduct of an EPT and a heat test were warranted."

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                    **Page 11 of 26**
  **Motion No.  001**

11 of 26

Although Dr. Gimbel noted that Bui took a periapical x-ray prior to the January 2, 2020 root canal procedure, and that this type of X-ray can reveal resorption, decay, or low-density osseous areas that could be a focus of infection, it "does not permit an endodontist to determine how many canals there are in a tooth to be treated for a root canal procedure." He asserted that

> "[i]t is recommended in the AAE and American Academy of Oral Maxillofacial Radiology Joint Position Statement 2016, Recommendation #2 . . . that a Limited Field of View CBCT should be considered the imaging modality of choice for initial treatment of teeth with potential for extra canals and suspected complex morphology such as mandibular anterior teeth, maxillary and mandibular premolars and molars, and dental anomalies. Whoever captures the scan is responsible for interpreting all information or data on the scan, whether it be the practitioner or a radiologist that was referred to for the interpretation. And finally, all of this information must be relayed to the patient."

Dr. Gimbel, referring to the American Association of Endodontists (AAE) Treatment Standards, averred that the proper determination of the number of canals to treat is crucial. Quoting from the AAE standards, he asserted that "[t]owards this goal, well-angulated preoperative radiographic images are *mandatory* to facilitate a safe and efficient access; negotiation of the root canal system; and to minimize the risk of procedural errors" (emphasis added). He further quoted from AAE standards that "cone beam CBCT images may be justified and necessary to evaluate the existence of extra canals, complex morphologies, curvatures and/or dental developmental anomalies." Dr. Gimbel also cited to the "Measuring Competence" section of the AAE standards, which provided that "[c]ompetence in accessing root canal systems is demonstrated by the following skills: Appropriate preoperative evaluation of anatomy and morphology and the analysis of the skill level necessary to predictably find and reveal all canal orifices." Upon reviewing the CBCT images that Bui generated and developed on January 6, 2020, Dr. Gimbel concluded that they depicted four canals in tooth 30, and he asserted that Bui did not treat this fourth canal because Bui read the scans incorrectly.

Dr. Gimbel noted that, upon reading Dr. Jenal's affidavit, it was not clear as to whether Dr. Jenal reviewed the actual CBCT images, or whether he relied only on Bui's deposition testimony and paper copies of the X-rays contained in the records in making this assumption.

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

Page 12 of 26

He asserted that it was necessary to examine the actual CBCT images to observe the four canals at tooth number 30, that Bui did not take a CBCT before the January 2, 2020 root canal on 30, but only on January 6, 2020, and that Bui relied solely on visualization in determining the number of canals to treat. Since the AAE Treatment Standards provided that endodontic treatment is considered complete following obturation, that is, the sealing, of all the root canals that are present, Dr. Gimbel opined that Bui's procedure on the plaintiff was incomplete because not all of the canals had been located, cleaned, and obturated. He was of the opinion that Bui departed from the standard of care because tooth 30 was incompletely treated, and the root canal flared up and failed, resulting in the loss of the tooth. As Dr. Gimbel explained it, by leaving bacteria in the tooth in an uninstrumented, unfilled, and undetected canal, Bui contributed to a flare-up, and that necrotic teeth that are treated in one visit, as was the case here, are more likely to flare up and cause long-term endodontic failure.

With respect to the injection that Bui administered to the plaintiff prior to the root canal procedure, Dr. Gimbel asserted that, although Bui administered a standard inferior alveolar nerve block, he also had the option of administering a Gow-Gates mandibular nerve block, an Akinosi block, also known as a closed mouth mandibular block, a periodontal ligament injection known as the "Wand," or an intraosseous injection known as an "X-Tip." As he explained it, during the injection process, there are various features of a patient's mouth, such as the Coronoid Notch, the Pterygomandibular Raphe, the occlusal plane of the mandibular teeth, and the Lingula, that an endodontist must consider when administering an injection. As Dr. Gimbel framed it, an endodontist must know where these features are in relation to the tooth that is being treated and that, during aspiration of the dental cartridge after injection, the cartridge must be checked to assure that there was no blood from the inferior alveolar artery. Since, according to Dr. Gimbel, the plaintiff actually suffered a nerve injury, Dr. Jenal was required to address these issues in his affidavit in order to rule out a breach of the standard of care, but that, since Dr. Jenal did not address those issues, he could not rule out a departure from the standard of

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

Page 13 of 26

care in connection with Bui's choice of injection method, the location of the injection, and the propriety of the technique that Bui employed in administering the injection.

As Dr. Gimbel explained, it there are multiple ways that a person can be injured during the injection process. In this regard, he stated,

> "[i]f the needle tip hits bone on the first injection and the needle is used again, it can create physical tearing of the Interior Alveolar Nerve ("IAN"). A hematoma can be created from a dental injection where an injury to the wall of a blood vessel causes blood to leak out into tissues where it does not belong. A direct injection into the IAN can cause a neuroma and paresthesia. Injection of Septocaine 4% can cause a paresthesia due to its neurotoxicity. Again, there is no evidence in the materials I have reviewed that these problems were ruled out by Dr. Jenal"

in his affidavit.

Dr. Gimbel expressly disagreed with other aspects of Dr. Jenal's affidavit, inasmuch as Dr. Gimbel did not consider several of Dr. Jenal's explanations or conclusions to be credible. Thus, he rejected Dr. Jenal's assumption that tooth 29 was completely asymptomatic on January 2, 2020, but became the main source of all of her complaints of swelling and numbness only four days later. According to Dr. Gimbel's interpretation of relevant imaging, the CBCT taken by Bui on January 6, 2020 did not show any periodontal ligament thickening or bone loss at tooth number 29, and the panoramic X-ray taken thereafter at Dr. Chen's office did not reveal any pathology associated with tooth number 29. Nonetheless, as he described it, "[i]t is not a reasonable assertion that Ms. Trager could have suffered such a severe infection on tooth number 29 that had spread to adjacent tissue, by January 6, if nothing could be picked up in testing on January 2." Hence, Dr. Gimbel concluded that Bui did not conduct testing on January 2, 2020 that was proper or sufficient to identify any problems that already existed in that tooth, and that the likely cause of the plaintiff's later complaints was a negligent injection. He also contested Dr. Jenal's assertion that it was the plaintiff's "failure to heed the recommendation or the advice of Dr. Bui on January 6, 2020 to undergo a root canal on tooth number 29" that "resulted in an infection spreading." As Dr. Gimbel explained it, tooth 29 evinced no lesions in

**805320/2020 TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No. 001**

**Page 14 of 26**

[* 14]

14 of 26

the January 6, 2020 CBCT imagery, and there is nothing else in this imagery to indicate that root canal therapy would have been the appropriate treatment on January 6, 2020. Dr. Gimbel asserted that it was unclear to him why "Bui and Dr. Jenal believe that Dr. Bui's conduct of the chew, percussion and endo-ice tests on January 6 was useful or effective in a diagnosis of tooth number 29. At this point, Ms. Trager was suffering from paresthesia and could not feel the part of her mouth, i.e. tooth number 29, where these tests were conducted."

Dr. Gimbel also faulted Dr. Jenal for failing to discuss the fact that Bui did not properly clear the infected pulp from tooth 30 during the January 2, 2020 root canal procedure, "leaving this infected pulp to fester in Ms. Trager's mouth." He stated that the bacteria causing the infection in the pulp "could only aid in creating the swelling and pain (i.e. flare-up) that occurred four days after her initial treatment." He also criticized Dr. Jenal for failing to analyze Dr. Chen's treatment plan, noting that, contrary to Bui, Dr. Chen did not propose to conduct root canal therapy on number 29 when the plaintiff came to his office with an alarming amount of swelling, and that Dr. Chen instead performed an emergency procedure to reduce the swelling in the plaintiff's mouth and administered a higher-dose antibiotic via intravenous solution. As Dr. Gimbel phrased it, this was

> "an indication, from one of Ms. Trager's actual treating doctors, that tooth number 30 was the immediate problem. There is no mention of tooth number 29 in Dr. Chen's January 7 records. Dr. Jenal also does not address the notation in Dr. Chen's records that Ms. Trager's tooth number 30 was fractured when she came into Dr. Chen's office for treatment on January 7. Dr. Bui neither tested for nor notated any fractures on tooth number 30."

With respect to Dr. Ruggiero's treatment of the plaintiff's complaints of paresthesia, dysesthesia, numbness, and loss of sensation in her face, Dr. Gimbel interpreted Dr. Ruggiero's records as indicating that Dr. Ruggiero himself believed the plaintiff's nerve injury was caused during the root canal procedure from an injection. In this regard, Dr. Gimbel asserted that, based on radiographic findings, Dr. Ruggiero ruled out "to a certain extent a direct instrument or traumatic neuropathy from files and reamers during the root canal therapy," and that

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No. 001**

**Page 15 of 26**

15 of 26

[* 15]

osteomyelitis was not the cause of the neuropathy, "given the fact that she had numbness the evening of the root canal," an assessment that was not altered after any subsequent visits to Dr. Ruggiero's office. Therefore, Dr. Gimbel endorsed Dr. Ruggiero's view that "one can only summarize that the neuropathy that she developed immediately after the root canal therapy was secondary to the injection." Hence, Dr. Gimbel expressly disagreed with Dr. Jenal's opinion that there was no evidence that Bui caused nerve injury to the plaintiff. In fact, according to Dr. Gimbel, the plaintiff's medical records showed exactly the opposite.

Dr. Gimbel also concluded that the consent given by the plaintiff to Bui was qualitatively insufficient. He noted that the consent form did not include a warning about the risks of injection injury and/or nerve damage during a root canal procedure, and that Bui did not discuss these risks with the plaintiff. Contrary to Dr. Jenal's opinion, Dr. Gimbel asserted that, in the dental profession, "this is a known risk, with potentially serious consequences," and that an informed consent form should include a discussion of the possibility of nerve damage due to injection.

Finally, Dr. Gimbel challenged Dr. Jenal's credentials, since the latter was a dentist, but not an endodontist, and thus Dr. Gimbel suggested that Dr. Jenal was not qualified to opine on the standard of care in endodontics or infectious diseases.

In reply, the defendants submitted an attorney's affirmation, in which their counsel argued that Dr. Jenal, as a dentist who had performed numerous root canal procedures, was indeed qualified to render an opinion as to when such a procedure was indicated and warranted, as well as the proper protocol for examining, testing, and treating teeth with that procedure, and providing follow-up treatment and care. The defendants essentially reiterated the conclusions reached by Bui and Dr. Jenal as to what Bui had determined, what he had done, and whether those determinations and treatment options were properly performed. The defendants also argued that Dr. Gimbel's affidavit was speculative, conclusory, and failed to refute all of the opinions rendered by Dr. Jenal.

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No. 001

Page 16 of 26

16 of 26

## V.    SUMMARY JUDGMENT STANDARDS

It is well settled that the movant on a summary judgment motion "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [citations omitted]).  The motion must be supported by evidence in admissible form (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), as well as the pleadings and other proof such as affidavits, depositions, and written admissions (*see* CPLR 3212).  The facts must be viewed in the light most favorable to the non-moving party (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]).  In other words, "[i]n determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility" (*Garcia v J.C. Duggan, Inc.*, 180 AD2d 579, 580 [1st Dept 1992]).  Once the movant meets his or her burden, it is incumbent upon the non-moving party to establish the existence of material issues of fact (*see Vega v Restani Constr. Corp.*, 18 NY3d at 503).  A movant's failure to make a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*see id.; Medina v Fischer Mills Condo Assn.*, 181 AD3d 448, 449 [1st Dept 2020]).

"The drastic remedy of summary judgment, which deprives a party of his [or her] day in court, should not be granted where there is any doubt as to the existence of triable issues or the issue is even 'arguable'" (*De Paris v Women's Natl. Republican Club, Inc.,* 148 AD3d 401, 403-404 [1st Dept 2017]; *see Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr*., 161 AD2d 480, 480 [1st Dept 1990]).  Thus, a moving defendant does not meet his or her burden of affirmatively establishing entitlement to judgment as a matter of law merely by pointing to gaps in the plaintiff's case.  He or she must affirmatively demonstrate the merit of his or her defense (*see Koulermos v A.O. Smith Water Prods*., 137 AD3d 575, 576 [1st Dept 2016]; *Katz v United Synagogue of Conservative Judaism*, 135 AD3d 458, 462 [1st Dept 2016]).

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No.  001

Page 17 of 26

17 of 26

A.  DENTAL MALPRACTICE BASED ON ALLEGED DEPARTURES FROM GOOD PRACTICE

"To sustain a cause of action for medical [or dental] malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (*Frye v Montefiore Med. Ctr.*, 70 AD3d 15, 24 [1st Dept 2009]; *see Dykes v Stabile,* 153 AD3d 783, 783-784 [2d Dept 2017]; *Alongi v Sutter*, 139 AD3d 887, 887-888 [2d Dept 2016]; *McGuigan v Centereach Mgt. Group, Inc.,* 94 AD3d 955, 956 [2d Dept 2012]; *Florio v Kosimar*, 79 AD3d 625, 625 [1st Dept 2010]; *Alvarado v Miles,* 32 AD3d 255, 256-257 [1st Dept 2006]).  Where a dentist fails properly to diagnose a patient's condition, thus providing less than optimal treatment or delaying appropriate treatment, and the insufficiency of or delay in treatment proximately causes injury, he or she will be deemed to have departed from good and accepted dental practice (*see Perez v Fitzgerald,* 115 AD3d 177, 178 [1st Dept 2014]; *Perlin v King*, 36 AD3d 495, 495 [1st Dept 2007]; *see generally Zabary v North Shore Hosp. in Plainview,* 190 AD3d 790, 795 [2d Dept 2021]; *Lewis v Rutkovsky*, 153 AD3d 450, 451 [1st Dept 2017]; *Monzon v Chiaramonte*, 140 AD3d 1126, 1128 [2d Dept 2016] ["(c)ases . . . which allege medical malpractice for failure to diagnose a condition . . .  pertain to the level or standard of care expected of a physician in the community"]; *O'Sullivan v Presbyterian Hosp. at Columbia Presbyterian Med. Ctr.*, 217 AD2d 98, 101 [1st Dept 1995]).

Contrary to the plaintiff's contention, Dr. Jenal, as a dentist who had conducted hundreds of root canal procedures, was qualified to render an opinion as to whether Bui departed from good and accepted dental practice in the manner in which he examined the plaintiff's teeth, read the relevant X-rays, elected which anesthetic to administer, administered the nerve block injection, determined that no treatment needed to be administered to tooth 29, and actually treated the canals of tooth 30.

The determination of whether a witness is qualified to give expert testimony is entrusted

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No.  001

Page 18 of 26

18 of 26

to the sound discretion of the trial court, the provident exercise of which will not be disturbed absent a serious mistake or an error of law (*see Guzman v 4030 Bronx Blvd. Assoc., LLC*, 54 AD3d 42, 49 [1st Dept 2008]).  The courts of this State repeatedly have rejected the concept that only a specialist practicing in a defendant's particular specialty is competent to testify that another specialist departed from accepted practice in the specialty (*see Fuller v Preis*, 35 NY2d 425, 431 [1974]; *Bartolacci-Meir v Sassoon*, 149 AD3d 567, 572 [1st Dept 2017]; *Bickom v Bierwagen*, 48 AD3d 1247,1248 [4th Dept 2008]; *Julien v Physician's Hosp*., 231 AD2d 678, 680 [2d Dept 1996]; *Matter of Enu v Sobol*, 171 AD2d 302, 304 [3d Dept 1991]; *Joswick v Lenox Hill Hosp*., 161 AD2d 352, 355 [1st Dept 1990]).  Nonetheless, a practitioner who is put forward by a party as an expert qualified to support or oppose a summary judgment motion must assert that he or she possesses the necessary knowledge and training in the relevant specialty, or explain how he or she came to it, and also must articulate the standard of care that allegedly was applicable (*see Colwin v Katz*, 122 AD3d 523, 524 [1st Dept 2014]).

> "To qualify as an expert, the witness should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable. Thus, if a physician possesses the requisite knowledge and expertise to make a determination on the issue presented, he need not be a specialist in the field. The question of whether a physician may testify regarding the standard of accepted medical practice outside the scope of his specialty can be a troublesome one, but appellate courts have rejected claims of error directed at a physician's qualifications to offer an opinion outside the scope of his specialty when the witness's specialty is closely related to the specialty at issue"

(*Matter of Enu v Sobol*, 171 AD2d at 304 [citations omitted]). Thus,

> "the affidavit must be by a qualified expert who 'profess[es] personal knowledge of the standard of care in the field of . . . medicine [or dentistry at issue], whether acquired through his practice or studies or in some other way' (*Nguyen v Dorce*, 125 AD3d 571, 572 [1st Dept 2015] [pathologist not qualified to render opinion as to whether defendant deviated from the standard of care in the field of emergency medicine]; *see also Atkins v Beth Abraham Health Servs.*, 133 AD3d 491 [1st Dept 2015] [osteopath not qualified to render opinion on treatment of a geriatric patient with diabetes and other conditions]; *Udoye v Westchester-Bronx OB/GYN, P.C.,* 126 AD3d 653 [1st Dept 2015] [pathologist not qualified to render an opinion as to the standard of care in obstetrics or cardiology]; *Mustello v Berg,* 44 AD3d 1018 [2d Dept 2007] [general surgeon not qualified to render opinion as to gastroenterological treatment])"

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**                      **Page 19 of 26**
**Motion No.  001**

19 of 26

(*Bartolacci-Meir v Sassoon*, 149 AD3d at 572-573 [emphasis added]).

Consequently, where, as here, the dentist proffering an allegedly expert affirmation demonstrates familiarity with, training in, and experience with certain aspects of the defendant's specialty, specifically, the proper protocol for assessing teeth for root canal therapy, and the manner of performing that therapy, he or she will be deemed to have the requisite experience, training, and knowledge necessary to render an opinion as to whether that defendant departed from standards of good practice that proximately caused injury to the plaintiff (*see Fuller v Preis*, 35 NY2d at 431 [neurologist was permitted to give an opinion in the closely related specialty of psychiatry on the issue of whether an accident was the proximate cause of a subsequent suicide]; *Humphrey v Jewish Hosp. & Med. Ctr*., 172 AD2d 494 [2d Dept 1991] [general surgeon was deemed to be qualified to render an opinion in the specialty of obstetrics and gynecology]; *Matter of Sang Moon Kim v Ambach*, 68 AD2d 986, 987 [3d Dept 1979] [opinion testimony of qualified neurosurgeon at a professional misconduct hearing was sufficient to permit a finding of gross negligence or gross incompetence of an orthopedic surgeon committed during spinal surgery]; *Matter of Lincoln v New York City Health & Hosps. Corp*., 2018 NY Slip Op 34085[U], *5, 2018 NY Misc LEXIS 14236, *8 [Sup Ct, Bronx County, May 3, 2018] [internist is qualified to render opinion as to the standard of care governing medical care and treatment of patients who undergo breast examinations and breast imaging studies, despite not being a radiologist, oncologist, or breast surgeon]; *cf. Vargas v Bhalodkar,* 204 AD3d 556, 557 [1st Dept 2022] ["(p)laintiff's expert, an internist and gastroenterologist with no apparent training or knowledge in cardiology, did not set forth sufficient qualifications to opine on whether [defendant] deviated from the relevant standard of care when she gave cardiac clearance for decedent to temporarily cease taking blood thinners and undergo a colonoscopy"]; *Newell v City of New York*., 204 AD3d 574, 574 [1st Dept 2022] ["an internist who demonstrated no familiarity with surgery in general or abdominal surgery in particular, was not qualified to render an opinion that

805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL
Motion No.  001

Page 20 of 26

20 of 26

[defendant] departed from accepted standards of medical care in performing plaintiff's appendectomy"]; *Samer v Desai*, 179 AD3d 860 [2d Dept 2020] [general and vascular surgeon not qualified to render opinion as to orthopedics or family medicine]; *Bartolacci-Meir v Sassoon*, 149 AD3d at 572 [1st Dept 2017] [general surgeon lacked any experience in gastroenterology sufficient to qualify him as an expert]; *Steinberg v Lenox Hill Hosp.*, 148 AD3d 612, 613 [1st Dept 2017] [plaintiffs' expert was "not qualified to offer an opinion as to causation[,as h]e specializes in cardiovascular surgery, not neurology or ophthalmology [and] failed to 'profess the requisite personal knowledge' necessary to make a determination on the issue of whether [an arterial] perforation was responsible for plaintiff's visual impairment"]).

With respect to the merits of the motion, to make a prima facie showing of entitlement to judgment as a matter of law, a defendant dentist moving for summary judgment must establish the absence of a triable issue of fact as to his or her alleged departure from accepted standards of dental practice (*see Xiao Yan Ye v Din Lam*, 191 AD3d 827, 828 [2d Dept 2021]; *Connecticut Indem. Co. v Hoexter,* 45 AD3d 282, 282 [1st Dept 2007]; *see also Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Barry v Lee*, 180 AD3d 103, 107 [1st Dept 2019]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24), or establish that the plaintiff was not injured by such treatment (*see Pullman v Silverman,* 28 NY3d 1060, 1063 [2016]; *McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d at 955; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]).

To satisfy his or her burden on a summary judgment motion, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]; *Joyner-Pack v Sykes*, 54 AD3d 727, 729 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d 935 [2d Dept 2007]). If the expert's opinion is not based on facts in the record, the facts must be personally known to the expert and, in any event, the opinion of a

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

**Page 21 of 26**

21 of 26

defendant's expert should specify "in what way" the patient's treatment was proper and "elucidate the standard of care" (*Ocasio-Gary v Lawrence Hospital,* 69 AD3d 403, 404 [1st Dept 2010]). Stated another way, the defendant's expert's opinion must "explain 'what defendant did and why'" (*id*., quoting *Wasserman v Carella*, 307 AD2d 225, 226 [1st Dept 2003]). Moreover, as noted, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiff's bill of particulars (*see Wall v Flushing Hosp. Med. Ctr*., 78 AD3d 1043 [2d Dept 2010]; *Grant v Hudson Val. Hosp. Ctr.*, 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

Once satisfied by the defendant, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted dental practice and/or opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries (*see Roques v Noble*, 73 AD3d at 207; *Landry v Jakubowitz*, 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski*, 57 AD3d 856 [2d Dept 2008]). Thus, to defeat a defendant's prima facie showing of entitlement to judgment as a matter of law, a plaintiff must produce expert testimony regarding specific acts of malpractice, and not just testimony that contains "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice" (*Alvarez v Prospect Hosp.,* 68 NY2d at 325; *see Frye v Montefiore Med. Ctr.*, 70 AD3d at 24). In most instances, the opinion of a qualified expert that the plaintiff's injuries resulted from a deviation from relevant industry or medical standards is sufficient to preclude an award of summary judgment in a defendant's favor (*see Murphy v Conner*, 84 NY2d 969, 972 [1994]; *Frye v Montefiore Med. Ctr*., 70 AD3d at 24).

The defendants' submissions established their prima facie entitlement to judgment as a matter of law by demonstrating, through the medical records and Dr. Jenal's affidavit, that they did not depart from good and accepted dental practice, and that nothing that they did or failed to do caused the injuries complained of by the plaintiff. Although Dr. Jenal's opinions as to the

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

Page 22 of 26

22 of 26

propriety of the manner in which the nerve block agent had been injected, and the reasons for the deterioration of tooth 29, were somewhat speculative, they nonetheless were sufficient to sustain the defendants' prima facie burden with respect to those issues. The plaintiff, however, raised a triable issue of fact with her expert's affidavit, in which he explicitly identified the manner in which the defendants departed from good and accepted dental practice, and explicitly explained the way in which those departures caused her teeth and dental canals to worsen, caused the root canal procedures to fail, caused the loss of teeth 29 and 30, and deprived her for an opportunity for a cure or a better outcome (see *Mortensen v Memorial Hosp.*, 105 AD2d 151, 156, 159 [1st Dept 1984]; *Kallenberg v Beth Israel Hosp.*, 45 AD2d 177, 178 [1st Dept 1974], *affd no op.* 37 NY2d 719 [1975]). Dr. Gimbel clearly asserted that a proper examination would have revealed the existence of any pathology in tooth 29 prior to the tooth 30 root canal procedure on January 2, 2020, that a root canal procedure on tooth 29 was not indicated, that the problems caused to that tooth and the concomitant paresthesia, paresthesia, dysesthesia, numbness, and loss of sensation in her face were caused by a negligent injection of a nerve block agent, and that it was Bui's failure to diagnose the actual condition of tooth 29 on that date that led to its deterioration and ultimate extraction. He further clearly asserted that Bui failed to detect the fourth canal under tooth 30, and that his failure to detect, file, drain, and close it led to the failure of the root canal procedure, and the need to extract that tooth.

Where a health-care provider working for a professional corporation renders medical care to a patient "within the scope of his or her employment" for that corporation, the corporation may be held vicariously liable for the negligence of the provider (*Petruzzi v Purow*, 180 AD3d 1083, 1084-1085 [2d Dept 2020]). Inasmuch as this court has concluded that there are triable issues of fact as to whether Bui committed malpractice, it also concludes that Yung Bui, D.D.S, P.C., doing business as Bryant Park Endodontics, as his employer, may be held vicariously liable for that malpractice.

**805320/2020  TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

**Page 23 of 26**

23 of 26

Hence, that branch of the defendants' motion which sought summary judgment dismissing the dental malpractice cause of action must be denied.

B.  <u>LACK OF INFORMED CONSENT</u>

The elements of a cause of action to recover for lack of informed consent are:

> "(1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury"

(*Spano v Bertocci*, 299 AD2d 335, 337-338 [2d Dept 2002]; *see Zapata v Buitriago*, 107 AD3d 977, 979 [2d Dept 2013]; *Balzola v Giese*, 107 AD3d 587, 588 [1st Dept 2013]; *Shkolnik v Hospital for Joint Diseases Orthopaedic Inst*., 211 AD2d 347, 350 [1st Dept 1995]).  For a statutory claim of lack of informed consent to be actionable, a defendant must have engaged in a "non-emergency treatment, procedure or surgery" or "a diagnostic procedure which involved invasion or disruption of the integrity of the body" (Public Health Law § 2805-d[2]).  "'[T]his showing of qualitative insufficiency of the consent [is] required to be supported by expert medical testimony'" (*King v Jordan*, 265 AD2d at 260, quoting *Hylick v Halweil*, 112 AD2d 400, 401 [2d Dept 1985]; *see* CPLR 4401-a; *Gardner v Wider*, 32 AD3d 728, 730 [1st Dept 2006]).

"'The mere fact that the plaintiff signed a consent form does not establish the defendants' prima facie entitlement to judgment as a matter of law'" (*Huichun Feng v Accord Physicians*, 194 AD3d 795, 797 [2d Dept 2021], quoting *Schussheim v Barazani*, 136 AD3d 787, 789 [2d Dept 2016]; *see Godel v Goldstein*, 155 AD3d 939, 942 [2d Dept 2017]). Nonetheless, a defendant may satisfy his or her burden of demonstrating a prima facie entitlement to judgment as a matter of law in connection with such a claim where a patient signs a detailed consent form, and there is also evidence that the necessity and benefits of the procedure, along with known risks and dangers, were discussed prior to the procedure (*see Bamberg-Taylor v Strauch*, 192 AD3d 401, 401-402 [1st Dept 2021]).  The defendants made the

necessary prima facie showing here with Bui's deposition testimony and the expert affidavit of Dr. Jenal. In opposition to that showing, however, the plaintiff raised a triable issue of fact with her own deposition testimony, in which she asserted that Bui never informed her of the risks and dangers of nerve block injections, and the expert affidavit of Dr. Gimbel, who opined that those dangers were well known in the dental profession, and that the consent that the defendants obtained from the plaintiff was qualitatively insufficient because they did not include any discussion of those risks either in the consent form and because they did not discuss them with the plaintiff at any time.

Finally, although Dr. Gimbel's affidavit was sworn to and executed in New Jersey, it was not accompanied by the certificate of conformity required by CPLR 2309. A certificate of conformity is a written instrument, pursuant to which a person qualified by the laws of the state in which an affidavit or affirmation is executed and notarized, or by the laws of New York, certifies that the out-of-state affidavit or affirmation has indeed been drafted, executed, and notarized in conformity with the laws of that state. The absence of the certificate of conformity, however, does not require the court to disregard or reject that affidavit, as the failure to include a certificate of conformity is a mere irregularity that may be cured by the submission of the proper certificate nunc pro tunc (*see Khurdayan v Kassir*, 223 AD3d 590, 591 [1st Dept 2024]; *Parra v Cardenas,* 183 AD3d 462, 463 [1st Dept 2020]; *Bank of New York v Singh*, 139 AD3d 486, 487 [1st Dept 2016]; *DaSilva v KS Realty, L.P.,* 138 AD3d 619, 620 [1st Dept 2016]; *Diggs v Karen Manor Assoc., LLC*, 117 AD3d 401, 402-403 [1st Dept 2014]; *Matapos Tech., Ltd. v Compania Andina de Comercio Ltda.*, 68 AD3d 672, 673 [1st Dept 2009]). The court notes that Dr. Jenal, who is licensed to practice dentistry in New York, nonetheless submitted an affidavit that was sworn to in Arizona. CPLR 2106 authorizes attorneys, physicians, osteopaths, or dentists licensed in this state to utilize an affirmation in lieu of an affidavit (*see* CPLR 2106[a]; *Nelson v Lighter*, 179 AD3d 933, 935 [2d Dept 2020]; *Lieber v City of New York*, 94 AD3d 715, 716 [2d Dept 2012]). Hence, Dr. Jenal could have availed himself of employing an affirmation in lieu of

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**
**Motion No.  001**

**Page 25 of 26**

[* 25]

an affidavit. Although his affidavit did not include the required certificate of conformity, the court will deem his affidavit to be an affirmation made under the penalties for perjury by a dentist licensed in New York, and the court will not require him to submit a certificate of conformity.

VI.     CONCLUSION

In light of the foregoing, it is,

ORDERED that the defendants' motion is denied; and it is further,

ORDERED that, on or before October 25, 2024, the plaintiffs shall submit a certificate of conformity in connection with the affidavit of Marc P. Gimbel, D.M.D.; and it is further,

ORDERED that that the parties shall appear for an initial pretrial settlement conference before the court, in Room 204 at 71 Thomas Street, New York, New York 10013, on October 10, 2024, at 2:30 p.m., at which time they shall be prepared to discuss resolution of the action and the scheduling of a firm date for the commencement of jury selection.

This constitutes the Decision and Order of the court.

__8/27/2024__
**DATE**

JOHN J. KELLEY, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**805320/2020   TRAGER, VICTORIA vs. BRYANT PARK ENDODONTICS ET AL**        **Page 26 of 26**
**Motion No.  001**

[* 26]

26 of 26